STATE v. AMEKER.

1. CONSPIRACY.—To define conspiracy as "an agreement by two or more persons to do an unlawful act or to do a lawful act, by unlawful means," is not error, especially when construed in connection with other parts of the charge further defining and illustrating the crime.
2. INDICTMENT—RIOT.—CONSPIRACY at common law in riot is of force in this State, and the words in an indictment, *contra formam statute,* otherwise charging a conspiracy at common law, may be disregarded as surplusage without striking them out.
3. CHARGE.—Judge did not as alleged describe the means of proof of conspiracy in its details.

Before DANTZLER, J., Orangeburg, May, 1905. Affirmed.

Indictment against Abe Ameker, J. B. Ameker, Cleveland Hooker, James McLeoud, and William Jamison, for conspiracy. The Judge charged the jury:

"Mr. Foreman and Gentlemen of the Jury: The law gives the right to a defendant to take the stand or not, in the trial of any case—that is, he may or may not testify, and the jury, by virtue of that fact, is not to be prejudiced against such a defendant. The failure of a defendant or defendants to testify should not operate against them, or either of them, in any way.

"Now, it is incumbent on the State to prove each and every charge of the indictment beyond a reasonable doubt; that does not mean a fanciful or imaginary doubt, but it must be a reasonable doubt. It is incumbent on the State, I say, to prove every charge against any defendant beyond such a doubt.

"These defendants, Mr. Foreman and gentlemen, are charged under the indictment with conspiracy, and conspiracy, Mr. Foreman and gentlemen of the jury, is an agreement by two or more persons to do an unlawful act, or to do a lawful act by unlawful means.

"For instance, suppose, Mr. Foreman, that you and the gentleman on your left would go out on the streets of Orangeburg and commit an assault and battery on some. other person, that would be an unlawful act, but it would not be a conspiracy, unless there was an agreement between you to do the act before doing it. It is an *agreement* to do an unlawful act that is the gist of the whole matter.

"Now, Mr. Foreman and gentlemen, you are to find the facts from the testimony brought out on the witness stand, and apply the law to the facts, giving the defendants the benefit of every reasonable doubt.

"If you find that these parties went to the place named and agreed to do the act or acts as alleged, they are guilty of conspiracy; or if you find that two or more of them went there and committed the acts alleged by virtue of an agreement so to do, then they are guilty of conspiracy.

"Now, where there is only one person concerned, there can be no conspiracy, because one person cannot make an agreement with himself.

"Therefore, if you find a verdict, you can find all guilty or all not guilty, or you can find two or more guilty, specifying which ones.

"Find your verdict from the testimony in the case, giving the defendants the benefit of every reasonable doubt.

"Take the record, gentlemen, and find your verdict.

"Mr. Foreman and gentlemen, a certain person named B. Lee Jeffcoat was mentioned in the indictment, but the case against him has been *nolle prossed,* so there is no case against B. Lee Jeffcoat."

*Messrs. W. H. Sharpe, Wolfe & Berry* and *Jas. F. Izlar,* for appellants.

*Messrs. Wolfe & Berry* cite: *Indictment confuses the two charges of statutory conspiracy and riot at common law:* Crim. Code, 233, 58; 14 Stat., 559. *Sentence should be either fine or imprisonment:* Crim. Code, 149; 20 S. C., 364.

*Mr. Jas. F. Izlar* cites: *The indictment cannot be sustained:* Crim. Code, 233; 7 Ency., 360, *et seq. Conspiracy at common law is a misdemeanor and punishable by fine and imprisonment:* 1 Hayw., 176; 12 Coke, 733; 3 Mod., 201. *Crime, if any, was riot for which defendants were not tried:* Bish. Crim. Proc., secs. 995, 202-245; 4 Met., 111; 12 Cox C. C., 87.

*Solicitor P. T. Hildebrand,* contra.

February 26, 1906. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The defendants were tried under the following indictment: "The jurors of and for the county aforesaid, in the State aforesaid, upon their oath, present, that Abe Ameker, B. Lee Jeffcoat, J. B. Ameker, Cleveland Hooker, William Jamison, James McLeoud, late of the county aforesaid, on the twenty-second day of April, in the year of our Lord one thousand and nine hundred and five, with force and arms, at Orangeburg, in the county and State aforesaid, then and there unlawfully, feloniously and wilfully conspired together, and banded themselves together, at a certain public place in the county and State aforesaid, to wit: at Laurel Bay, for the purpose of hindering, preventing and obstructing certain citizens of the United States and of this State of and from the free exercise of their rights and privileges, accorded them under the laws of the United States and the laws of this State, by then and there obstructing, hindering and preventing, L. P. Wisenhunt, T. A. Salley, E. J. Salley, Robert Salley, R. J. Salley, Charlie Hall, S. B. Hall, M. S. Williams, Mike Fanning, Arthur Robinson, Dan Davis, Mrs. Tom Salley, Mrs. R. E.

Fanning, Mrs. S. B. Hall, Mrs. G. S. Davis, Willis Williams and divers other persons to the jurors aforesaid unknown, who, being then and there assembled for the purpose of engaging in social intercourse and peaceable pastimes, such as are commonly enjoyed at picnics, and were so engaged; they, the said Abe Ameker, B. Lee Jeffcoat, J. B. Ameker, Cleveland Hooker, William Jamison and James McLeoud, in pursuance of the said conspiracy, then and there unlawfully, violently, riotously, tumultuously, with pistols and other weapons, and threats, routing and putting to flight the said L. P. Wisenhunt, T. A. Salley, E. J. Salley, Robert Salley, R. J. Salley, Charlie Hall, S. B. Hall, M. S. Williams, Mike Fanning, Arthur Robinson, Dan Davis, Mrs. Tom Salley, Mrs. R. E. Fanning, Mrs. S. B. Hall, Mrs. G. S. Davis, Willis Williams and divers other persons to the jurors aforesaid unknown, against the form of the statute in such cases made and provided, and against the peace and dignity of the State.

After the introduction of testimony for the State and the charge of his Honor, Judge C. G. Dantzler, the jury found a verdict of guilty, and the defendants, Abe Ameker, J. B. Ameker and Cleveland Hooker, were each sentenced to be imprisoned in the county jail of Orangeburg County at hard labor upon the public works of said county, for the term of two years, or be confined in the State penitentiary at hard labor for a like period. The two defendants, William Williamson and James McLeoud, were each sentenced to be imprisoned in the county jail of Orangeburg County at hard labor upon the public works of said county for a period of eighteen months, or be confined in the State penitentiary at hard labor for a like period.

From this judgment the defendants appealed to this Court upon the following grounds:

"1. Because his Honor erred, in holding that notwithstanding there was no statute making the offense criminal for which the defendants stood indicted, the said indictment was good at common law, and that the defendants could be

tried thereunder, and if convicted could be punished as a common law offense is punished.

"2. Because his Honor erred in holding that the offense with which the defendants were charged constituted a criminal conspiracy, and could be punished as such, at common law, if the defendants were convicted, notwithstanding the object in attending the picnic may have been lawful, if the means employed for attaining said object were unlawful.

"3. Because his Honor erred in holding that notwithstanding the gist of every conspiracy is the unlawful combination of two or more persons to do an unlawful act, no previous agreement of the parties charged was necessary to complete the crime, but that the conspiracy might arise on the instant and be proven by the circumstances surrounding the act; whereas, he should have held that both under statute and at common law, some unlawful means should have been contemplated or used, some overt act committed, some combination of the defendants for carrying their plans into effect must be proved; and that under the circumstances here no such agreement could have been entered into between the defendants, or inferred from their conduct or acts.

"4. Because his Honor erred in holding that if the conduct of the defendants on the occasion was such as to tend a breach of the peace, they could be punished at common law; whereas, he should have held, that if each of the defendants acted singly and individually and for himself, on the occasion, the crime of conspiracy was not committed, and the defendants could not be punished under the said indictment for such crime, either under the statute law or at common law.

"5. Because there is no such crime as conspiracy either by statute or at common law in attending a public picnic, the object being a lawful one, and there being no previous combination or agreement to commit any crime proved, and his Honor erred in not so holding, and in not so instructing the jury.

"6. Because the means used as shown by the acts of the defendants, and the testimony before the Court at the trial, did not amount to an indictable crime either under the statute or at common law, but at the most merely a civil injury, and his Honor erred in not so holding and charging the jury.

"7. Because his Honor erred in not quashing the indictment on the ground that it did not charge an indictable offense either under any statute or at common law. And after verdict against the defendants, the same being a misdemeanor, not making the sentence of the Court fine *and imprisonment,* and in drawing a distinction therein, the verdict being guilty generally.

"8. Because his Honor erred in not having the prisoners arraigned, if the offense was felony, and made so by statute, as contended by the learned solicitor.

"9. Because his Honor erred, in holding that the indictment was one at common law; that no overt act was necessary to render the crime complete, and that the jury might infer the previous combination from the circumstances, such as the conduct and acts of the parties after their arrival on the picnic grounds; whereas, the Circuit Judge should have held and instructed the jury that there is no liability for acts not contemplated, and which are not within the purpose of the conspiracy or in the natural consequence of the execution of such purpose.

"10. Because his Honor erred in refusing on motion to strike out the surplusage in the indictment, and to elect on which charge of conspiracy the State would proceed against the defendants.

"11. Because his Honor erred in ruling that the defendants would go to trial on the charge of conspiracy contained in the indictment, and in refusing to require the State to elect the same, charging an offense both of common law and under the statute law, and in holding that the conspiracy charged by the indictment was a conspiracy at common law, and not under any statute law of the State; whereas, he

should have granted the motion to elect on which charge the State would rely, and in not holding that the indictment attempted to charge a conspiracy under the statute law of this State, and that there was no statute applicable and no offense at common law charged; and he consequently should have quashed the indictment, and permitted the defendants to be discharged from custody, and to go without day.

"12. Because his Honor erred in his charge and in defining the crime of conspiracy when he charged the jury as follows: 'Conspiracy, Mr. Foreman and gentlemen of the jury, is an agreement by two or more persons to do an unlawful act, or to do a lawful act by unlawful means;' whereas, he should have charged the jury and defined the offense, as follows: 'Conspiracy is a combination of two or more persons to do an unlawful act, whether that be the final object of the combination, or only the means to the final end, or whether the act be a crime or an act hurtful to the public, a class or persons, or an individual,' as the offense is usually divided into three heads: (1) Where the end to be obtained is in itself a crime. (2) Where the object is lawful, but the means by which it is to be attained are unlawful; and (3) where the object is to do an injury to a third person, or a class, though, if the injury were inflicted by a single individual, it would be a civil injury and not a crime. The gist of the crime being the combination, there must be some understanding between the parties; the mere intention, or cognizance of another's intention, to commit a crime, cannot make a person a co-conspirator. There must be an unlawful combination to complete the conspiracy, whether the crime be at common law or under a special statute making the offense indictable commonly or generally."

It seems that on the 22d of April, 1905, about two hundred people, men and women, were gathered together at a picnic at Laurel Bay, on the Edisto River, in Orangeburg County, in this State, and this kind of gathering was usual on each year. People began to assemble at about 11 o'clock in the morning. After dinner and at about 3 o'clock, the

defendants appeared on the grounds. They first shot at a
bottle in the river and afterwards within twenty feet of the
ladies and gentlemen who had arranged the picnic. Abe
Ameker began to play his banjo, while Cleveland Hooker
danced and cursed. The other defendants were gathered
about these two, including the two negroes of the party.
One of the defendants had a paddle in his hand, and the
inevitable pistol was also in hand. There was evidently
some bad blood created among the picnickers by the pres-
ence of the two negroes, and also by the profane swearing,
for some people made ready to go home, so as to avoid such
bad conduct. It was perfectly natural for those white
people to object to the presence of the negroes at their picnic,
as well as the use of profanity in their hearing. It was
natural, also, for the picnic party to object to the firing of
the pistols, but still nothing was done by the picnic party.
One of them had a dog, and Charles Cleveland knocked the
dog, which caused a Mr. Wisenhunt to ask them not to hurt
the dog. At once Cleveland said, "I will kick you"—Mr.
Fanning said, "I wouldn't take that." Abe Ameker said,
"What in the hell have you got to do with it—what have you
got to stick your mouth in it for?" and he said, "If there is
nothing to do but a fight, you can get it." Abe Ameker
walked up with a drawn knife. Mr. Hooker drew a pistol,
and there was another knife in the crowd. Mr. Wisenhunt
said, "I am not positive that Chicken Ameker drew it;" he
also said, "The colored men were there; I only saw them in
a sort of a scrimmage. I heard some of the ladies ask the
gentlemen not to have any row." The defendants were
cursing. Chicken Ameker's name was John B. Ameker.
Richard J. Salley testified that "I was at the picnic. The
first thing I saw was these three white men, dancing and
picking a banjo and cursing before our ladies. I did not get
into the row. I was trying to get my mother and family out
of the way. The first thing I saw was this black negro
knock Shelly Hall down with a boat paddle, knocked him
senseless; and I saw Mr. Hooker draw a pistol. He said,

22—73

'I will kill the first d—d man that troubles my negro.' The
yellow negro had Charlie Hall on the ground, and when
Shelly Hall went to pull him off, the black negro knocked
him." The question was asked him: "Who did you see on
the log?" and he answered, "The two Mr. Amekers, these
two negroes and Mr. Hooker. They were all there to-
gether." The testimony tended to prove that the defendants
were not invited to the picnic. That they were all together;
each one of them took part in the difficulty. They were
cursing. They shot their pistols. The picnic party were
having a happy time until this party of five came upon the
grounds.

When the indictment was being considered, Mr. Izlar
moved that the surplusage therein be stricken out. Motion
was overruled. Mr. Sharpe moved that the indictment be
specifically drawn as to whether defendants go to trial on
the charge of conspiracy or not. The Judge said, "You
will go to trial on the charge of conspiracy." Thereupon
Mr. Wolfe, for the defendants, moved that the solicitor
elect. Motion refused.

It will be noticed that the surplusage which it was moved
to have stricken from the indictment, was not specifically
noticed. But we will consider that this motion was directed
to the expunging of such parts of the indictment as
related to the history of the conspiracy by naming
the persons who were interfered with by the de-
fendants. The Court ordered that the misdemeanor of a
conspiracy at common law should be tried. This necessitates
that the character of that offense should be considered.
What is conspiracy? Under the law it may be defined as
follows: "The combination of two or more persons to do
something unlawful, either as a means or as an ultimate end"
—*Com.* vs. *Waterman,* 122 Mass., 43; or, as remarked by
the 6th A. & E. Ency., page 832: "Conspiracy, therefore,
is rather described than defined, and the description which
seems to have the widest recognition and approval by the
authorities declares a criminal conspiracy to consist of a

combination .between two or more persons for the purpose of accomplishing a criminal or unlawful object, or an object neither criminal nor unlawful by criminal or unlawful means." Now, what was the description given by the Circuit Judge of this offense? In his charge he said: "These defendants, Mr. Foreman and gentlemen, are charged under the indictment with conspiracy, and conspiracy, Mr. Foreman and gentlemen of the jury, is an agreement by two persons to do an unlawful act or to do a lawful act by unlawful means." But the Circuit Judge goes on and says: "For instance, suppose, Mr. Foreman, that you and the gentleman on your left would go out in the streets of Orangeburg and commit an assault and battery on some other person, that would be an unlawful act, but it would not be a conspiracy, unless there was an agreement between you to do the act before doing it. It is an *agreement* to do an unlawful act that is the gist of the whole matter." The Circuit Judge goes further and charges the jury: "If you find that these parties went to the place named and agreed to do the act or acts alleged, they are guilty of conspiracy, or if you find that two or more of them went there and committed the acts alleged by virtue of an agreement so to do, then they are guilty of a conspiracy." It seems to us the Circuit Judge has, by the charge thus made to the jury, correctly described the offense of conspiracy. So far, therefore, the Circuit Judge has committed no error in describing the offense of conspiracy.

Let us look and see if the Circuit Judge was in error in holding that there was no surplusage to be stricken out of the indictment. Chief Justice McIver, in his dissenting opinion in the case of the *State* vs. *Harden,* 11 S. C., 360, 374, said: "It is a well established rule of criminal pleading that an indictment for an offense created by statute must follow the words of the statute; and if it does not, it cannot be sustained except by the rejection of the words *contra formam statuti,* and treating it as an indictment at common law, which may be done in those cases

where the offense existed at common law, and.has not been abrogated by any statute." This opinion of Chief Justice McIver has been since affirmed by this entire Court—*State* vs. *Wolfe,* 61 S. C., 27, 39 S. E., 179. So, therefore, any words not absolutely necessary to the indictment would be treated as immaterial, and, therefore, need not be stricken out. The *State* vs. *Crawford,* 38 S. C., 330, 17 S. E., 36. The common law offense of conspiracy, applying as it does to a riot, is set forth in the indictment. Chitty's Blackstone, 2d vol., 108. But it is alleged that the crime or offense of conspiracy no longer exists in this State. The case of the *State* vs. *Martin DeWitt and George Watts,* 2 Hill, 282, expressly rules that the Statute 33, Edward I., does not abrogate the law of conspiracy in this State, nor does our Criminal Code, section 233, do so. See, also, *State* vs. *Buchanan,* 9 Am. Decisions, 534.

There is nothing in the charge of the Circuit Judge which is descriptive of the means of proof of this crime of conspiracy in its details, and, therefore, the exceptions which in whole or in part refer to the charge in these particulars, are unsupported.

It will be necessary in the report of the case to set forth the entire charge of the Circuit Judge.

We have considered all the exceptions and overruled them.

It is the judgment of this Court, that the judgment of the Circuit Court is affirmed.

MR. JUSTICE GARY *concurs in the result.*