**The STATE, Respondent,**

v.

**Virgil GOSNELL, Appellant.**

**No. 3219.**

Court of Appeals of South Carolina.

Heard Dec. 9, 1999.

Decided July 17, 2000.

628

Assistant Appellate Defender Melody J. Brown, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon; Chief Jonathan E. Ozmint and Assistant Attorney General Anne Hunter Young, both of State Grand Jury, all of Columbia, for respondent.

HOWARD, Judge:

In this State Grand Jury prosecution, Virgil Gosnell and twenty-five co-defendants were charged with conspiracy to traffic in 400 or more grams of cocaine in violation of S.C.Code Ann. § 44-53-370(e)(2)(e) (Supp.1999). Gosnell was convicted of conspiracy to traffic in cocaine in the amount of at least 200 grams, but less than 400 grams, which was charged by the trial court as a lesser included offense over his objection. Gosnell was sentenced to twenty-five years imprisonment and a $100,000 fine. On appeal, Gosnell argues the trial court erred in charging conspiracy to traffic in cocaine in the amount of at least 200 grams, but less than 400 grams, as directed verdict, that he was sentenced in the absence of subject matter jurisdiction, and that he was sentenced to an illegal, excessive sentence. We reverse.

## FACTS/PROCEDURAL BACKGROUND

The prosecution of Gosnell and twenty-five co-defendants was the culmination of a two year State Grand Jury (SGJ) investigation. The investigation began in August 1993, when police arrested Michael Greer on a cocaine charge and executed a search warrant at his residence. Over the next two years, police followed the chain of Greer's suppliers, continuing to make purchases and turning those arrested into cooperating informants.

As a result of information provided by Greer, SGJ officers arranged four controlled cocaine buys from James Smith. Smith agreed to assist the officers and they set up three controlled cocaine buys from James Hattaway. Hattaway in turn led the officers to Todd Brank, from whom they effected

at least two controlled buys. Brank also cooperated, and the officers set up a five kilogram undercover deal with Jerome "Babe" Harris. Harris agreed to cooperate but had not yet paid for the drugs, so the officers made an undercover payment of $115,000 to O'Bryant "O.B." Harris for him.[1]

Officers arrested O.B. Harris on August 31, 1996, and he identified Jose Gustavo Castineira as his cocaine source. Officers set up a fake undercover payoff of Castineira, to take place September 1 at Harris Brothers' Garage, which was wired for sound and video. On the appointed day, Castineira and Juan Carlos Vasquez, both Cuban residents of Miami, arrived at the garage in a Mercedes Benz driven by Castineira. Both O.B. and Babe Harris were present. After a brief (recorded) conversation, in which O.B. Harris, Babe Harris, and Castineira discussed a twenty kilogram exchange, Castineira picked up the "cash" and placed it in the vehicle. The officers arrested Castineira and Vasquez.

On October 8, 1996, the SGJ indicted twenty-six defendants for conspiracy to traffic in 400 or more grams of cocaine, pursuant to S.C.Code Ann. § 44-53-370(e)(2)(e). Eighteen defendants pleaded guilty; the remaining eight were tried together during a two-week period in late April—early May 1997, including Gosnell.

Under the State's view of the evidence, Castineira was at the top of the distribution chain. To the extent that the State established that the Castineira conspiracy existed, multiple kilograms of a mixture containing cocaine were distributed under any view of the evidence. Gosnell, on the other hand, was at the lower level of the distribution chain. Under the State's evidence, Castineira distributed to O.B. Harris, who then distributed to Johnny Harold Harris, a/k/a Johnny Harold Miller (Miller) until he went to federal prison for distributing two kilograms of cocaine provided by Castineira. Once Miller went to prison, the conspiracy continued to operate, with O.B. Harris then distributing to Jerome "Babe" Harris thereafter. Babe Harris, in turn, distributed to Todd Brank, who distributed in smaller quantities to multiple people, including James Hattaway. Hattaway distributed smaller amounts to Gosnell. Consequently, under the State's evi-

---

1. Babe Harris and O.B. Harris are not related.

dence, the amount of cocaine actually handled by Gosnell was much less than the multiple kilogram distribution of the conspiracy itself. Because the evidence indicated Gosnell only handled a maximum of 252 grams, the court charged conspiracy to traffic in cocaine in the amount of at least 200 grams, but less than 400 grams, as a lesser included offense which the jury could consider in the case against Gosnell.

At the close of the State's case, Gosnell moved for a directed verdict, asserting the State's evidence, taken in a light most favorably to the State, did not show that Gosnell participated in a conspiracy to traffic in 400 grams or more of cocaine as alleged in the indictment. The trial court denied the motion. Gosnell did not present a defense. Gosnell renewed his motions, again arguing that the State did not present evidence of one conspiracy to traffic 400 grams or more, as alleged in the indictment. The court denied this motion, but in the case against Gosnell, decided to charge conspiracy to traffic in cocaine in the lesser amount. The jury convicted Gosnell of the offense of conspiracy to traffic in cocaine in the lesser amount of at least 200 grams, but less than 400 grams.

Gosnell also asserted throughout the trial that the State had indicted him for conspiracy to violate the Controlled Substances Act pursuant to S.C.Code Ann. § 44–53–420 (1985), rather than indicting him for trafficking in cocaine by conspiring with others as delineated under S.C.Code Ann. § 44–53–370(e) (Supp.1999). Therefore, he argued that he should be subjected to a maximum sentence of one-half the sentence permitted for trafficking in cocaine, in accordance with section 44–53–420. The trial court disagreed, sentencing him under section 44–53–370(e) to twenty-five years imprisonment and a $100,000 fine. This appeal followed.

## LAW/ANALYSIS

The indictment charged Gosnell with violating section 44–53–370(e)(2)(e) by conspiring to traffic in 400 or more grams of cocaine. The indictment alleged that the defendants, including Gosnell:

... did ... knowingly, willingly, unlawfully, and willfully conspire, for the purpose of selling, delivering, purchasing, or bringing into this State, or providing financial assistance

or otherwise aiding and abetting the sale, delivery, purchase, or bringing into this State, or the knowing actual or constructive possession, or the knowing attempt to become in actual or constructive possession of four hundred (400) grams or more of cocaine. . . .

 There is essentially a two-part test for determining whether to charge a lesser included offense. First, the court must determine if the proposed charge is legally a lesser included offense. In this regard, an indictment will sustain a conviction for a lesser offense if the lesser offense is included within the greater charged offense. *State v. Fennell,* 263 S.C. 216, 209 S.E.2d 433 (1974). The test for determining when a crime is a lesser included offense of the crime charged is whether the greater offense includes all the elements of the lesser offense. *State v. Suttles,* 279 S.C. 87, 302 S.E.2d 338 (1983). If the lesser offense includes an element not included in the greater offense, then the lesser offense is not included in the greater. *Id.*

Section 44–53–370(e) defines the offense of trafficking in cocaine as follows:

Any person who knowingly sells, manufactures, cultivates, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, cultivate, deliver, purchase, or bring into this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of:

(2) ten grams or more of cocaine or any mixtures containing cocaine, as provided in Section 44–53–210(b)(4), is guilty of a felony which is known as "trafficking in cocaine". . . .

S.C.Code Ann. § 44–53–370(e)(2) (Supp.1999); *State v. Raffaldt,* 318 S.C. 110, 456 S.E.2d 390 (1995).

There is no South Carolina case which directly answers the question of whether the graduated sentencing categories based upon quantity of cocaine are lesser included offenses. Although the statute provides a graduated structure of increasing penalties for trafficking in larger amounts of cocaine or any mixture containing cocaine, the statute is triggered by committing one of the prescribed acts with regard to ten grams or more. *Raffaldt,* 318 S.C. at 117, 456 S.E.2d at 394.

Thus, our supreme court has ruled that an indictment charging trafficking in cocaine, without specifying the amount, or specifying only that the amount was in excess of ten grams, is sufficient to confer subject matter jurisdiction for trafficking in any amount. *Granger v. State*, 333 S.C. 2, 507 S.E.2d 322 (1998); *see also State v. Towery*, 300 S.C. 86, 386 S.E.2d 462 (1989).

In *Granger v. State*, 333 S.C. 2, 507 S.E.2d 322 (1998) the supreme court ruled that an indictment which alleged that the defendant trafficked in cocaine in an amount in excess of ten grams did not limit jurisdiction to the lowest sentencing category of ten grams or more of cocaine, but less than 28 grams. Therefore, the court concluded the trial court had subject matter jurisdiction to convict the defendant of trafficking in cocaine in the next higher sentencing level of 28 grams or more, but less than one hundred grams, where the facts at trial substantiated the higher amount. In support of this ruling, the court cited with approval the Alabama case of *Darby v. State*, 516 So.2d 775 (Ala.Crim.App.1986), *rev'd on other grounds*, 516 So.2d 786 (1987) for the proposition that an "indictment alleging defendant trafficked '28 grams or more' of cocaine, without specifying the exact amount of cocaine [was] sufficient; [the] provisions of trafficking relating to minimum sentencing requirements did not involve 'elements of the offense' of trafficking." *Granger*, 333 S.C. at 4–5, 507 S.E.2d at 324.

Conversely, our supreme court has also ruled that an indictment which does charge a specific sentencing parameter by designating an amount within a particular sentencing level cannot be amended before trial pursuant to S.C.Code Ann. § 17–19–100 (1985) to charge an amount within an increased sentencing level because to do so changes the nature of the offense by increasing the penalty involved. *Clair v. State*, 324 S.C. 144, 478 S.E.2d 54 (1996). In reaching this decision, the court interpreted its holding in *Hopkins v. State*, 317 S.C. 7, 451 S.E.2d 389 (1994) to declare that an amendment to an indictment is improper if it increases the penalty. If, however, the provisions relating to minimum sentencing requirements do not involve elements of the offense, then this reasoning is difficult to reconcile with *State v. Evans*, 322 S.C. 78, 470 S.E.2d 97 (1996) wherein our supreme court stated that:

"A material variance between the charge and the proof entitles the defendant to a directed verdict. A variance is not material if it is not an element of the offense." *Evans,* 322 S.C. at 81, 470 S.E.2d at 99; *see also State v. Gunn,* 313 S.C. 124, 437 S.E.2d 75 (1993), *cert. denied,* 510 U.S. 1115, 114 S.Ct. 1063, 127 L.Ed.2d 383 (1994).[2]

██ In *State v. Raffaldt,* 318 S.C. 110, 456 S.E.2d 390 (1995) the court noted without comment that the trial court had charged the lower sentencing category amounts as included within the charged offense, but the court did not rule on the propriety of that portion of the lower court's charge. In *Matthews v. State,* 300 S.C. 238, 241, 387 S.E.2d 258, 260 (1990) the supreme court concluded that "the legislature intended possession with intent to distribute to be a lesser-included offense of trafficking based upon possession." Under this same reasoning, we conclude that "Conspiracy to traffic in cocaine in the amount of 400 grams or more" can include conspiracy to traffic in lesser amounts.

██ The second issue to be resolved in determining whether to charge a lesser included offense, is whether or not the lesser included offense is factually sustainable under any view of the evidence. A trial judge must charge a lesser included offense if there is evidence from which it can be inferred that the defendant committed the lesser rather than the greater offense. *State v. Drafts,* 288 S.C. 30, 340 S.E.2d 784 (1986). On the other hand, "[t]he trial court may and should refuse to charge on a lesser-included offense where there is no evidence that the defendant committed the lesser rather than the greater offense." *State v. Smith,* 315 S.C. 547, 549, 446 S.E.2d 411, 412–13 (1994) (citing *Casey v. State,* 305 S.C. 445, 409 S.E.2d 391 (1991)).[3]

---

**2.** Perhaps, then, these cases are more easily reconciled by application of the rule that a conviction will not be overturned due to evidence that tends to show a narrower charge than that contained in the indictment if the narrower charge is fully included within the indictment. *Evans,* 322 S.C. at 82, 470 S.E.2d at 99. If "trafficking in cocaine" includes all amounts "ten grams or more," then this is inclusive of all sentencing levels contained within the statute. *See Granger v. State,* 333 S.C. 2, 507 S.E.2d 322 (1998).

**3.** The question has historically been presented in the case law of this state in the context of a failure to charge the lesser included offense.

 To determine whether the facts support a charge on the lesser amounts, we first analyze the charged offense. A conspiracy is "a combination or agreement between two or more persons for the purpose of accomplishing a criminal or unlawful object...." *State v. Gunn,* 313 S.C. 124, 133–34, 437 S.E.2d 75, 80 (1993), *cert. denied,* 510 U.S. 1115, 114 S.Ct. 1063, 127 L.Ed.2d 383 (citing *State v. Ameker,* 73 S.C. 330, 53 S.E. 484 (1906)); *see also* S.C.Code Ann. § 16–17–410 (Supp. 1999); *State v. Wilson,* 315 S.C. 289, 433 S.E.2d 864 (1993). The gravamen of conspiracy is the agreement or mutual understanding. *Gunn,* 313 S.C. at 134, 437 S.E.2d at 80; *Wilson,* 315 S.C. at 294, 433 S.E.2d at 868.

 "The overt acts committed in furtherance of the conspiracy are not elements of the crime. Under South Carolina law, a conspiracy does not require overt acts." *State v. Wilson,* 315 S.C. 289, 294, 433 S.E.2d 864, 867–868 (1993). "The substantive crimes committed in furtherance of the conspiracy constitute circumstantial evidence of the existence of the conspiracy, its object, and scope." *Id.* (citing *State v. Amerson,* 311 S.C. 316, 428 S.E.2d 871 (1993)).

 In this case, the conspiracy charged in the indictment was an agreement to traffic in 400 or more grams of cocaine. The evidence at trial clearly established that the amount of cocaine or a mixture containing cocaine involved in the alleged conspiracy far exceeded 400 grams. It is firmly rooted in our law that "[o]nce a conspiracy has been established, evidence establishing beyond a reasonable doubt the connection of a defendant to the conspiracy, even though the connection is slight, is sufficient to convict him with knowing participation in the conspiracy." *State v. Horne,* 324 S.C. 372, 382, 478 S.E.2d 289, 294 (Ct.App.1996) (citing *State v. Sullivan,* 277 S.C. 35, 282 S.E.2d 838 (1981)). Further, "the acts and declarations of any conspirator made during the conspira-

---

There is no South Carolina case which we have found directly addressing the question of whether or not a trial court commits reversible error by improperly charging a lesser included offense which is not factually presented. We do not rule on that issue, and we do not mean to suggest that such a charge, over a defendant's objection, would be reversible error without a showing of prejudice.

cy and in furtherance thereof are deemed to be the acts and declarations of every other conspirator and are admissible against all." *Id.* (quoting *Sullivan,* 277 S.C. at 42, 282 S.E.2d at 842). Therefore, if the defendant's actions, however slight, are sufficient to establish his participation in the conspiracy, then he is guilty of the charged conspiracy. Conversely, a variance between a single drug trafficking conspiracy charged in an indictment and several conspiracies proved at trial is a "material variance" and cannot support the convictions of defendants not involved in the charged conspiracy, but only those who are so involved. *State v. Gunn,* 313 S.C. 124, 437 S.E.2d 75 (1993).

In view of these legal principles, we conclude that by charging the lesser amount as a lesser included offense, the court committed reversible error because it allowed the jury to convict Gosnell of a different, uncharged conspiracy. *Id.* Conspiracy to traffic in an amount of cocaine contained within a lesser sentencing level than that alleged in the indictment may be proper where the amount involved in the object of the conspiracy is in controversy. In such circumstances, the lesser charge would be an appropriate consideration in defining the scope or object of the conspiracy, and it would apply to each alleged conspirator. Factually, that was not the case here. Though the individual amount which Gosnell allegedly handled was 252 grams, the evidence clearly established that the amount trafficked by the conspiracy far exceeded 400 grams. Consequently, Gosnell was convicted for an offense not contained within the indictment, and his conviction cannot stand.

Having reached this conclusion, it is unnecessary to address Gosnell's remaining issues on appeal. Accordingly, Gosnell's conviction and sentence are

**REVERSED.**

CURETON and HUFF, JJ., concur.