20911

The STATE, Respondent, v. Daniel L. McGUIRE, Appellant.

(253 S. E. (2d) 103)

*Kerry W. Koon* and *O. Grady Query,* Charleston, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Atty. Gen. Brian P. Gibbes,* Columbia, and *Sol. Capers G. Barr, III,* Charleston, *for respondent.*

March 13, 1979.

*Per Curiam:*

Mr. and Mrs. Truman Glenn were robbed and beaten by three men armed with a pistol. Mr. Glenn died of injuries sustained.

Appellant Daniel L. McGuire was indicted, along with Wayne M. Crosby and Harold C. Ulrichsen, for armed robbery and the murder of Mr. Glenn. McGuire was brought to trial and convicted of both offenses. He has appealed, alleging prejudicial evidentiary errors and errors in instructions to the jury.

During trial, the State presented the testimony of Crosby. He had been granted immunity from prosecution in return for testifying. He had also been granted immunity on an unrelated charge of breaking and entering an automobile and larceny of a pistol. Subsequent to the immunity agreement, Crosby had admitted, at a suppression hearing before Circuit Judge Klyde Robinson, who was not the trial judge, that he had committed several crimes involving moral turpitude, stating that he had broken into Brown's Amusement, three service stations, two cafes, two houses and two cars; he also

stated that he had cracked a safe, sold various drugs, and had once broken into his grandmother's house and stolen $2,500.00. Several of the places were broken into more than one time. These offenses occurred between 1971 and 1976. Apparently, he has not been prosecuted for these offenses.

In the trial, Crosby testified that he and McGuire and Ulrichsen robbed the Glenns and stated that he had decided to testify for the State in order to help set things straight. For the purpose of impeaching his credibility, defense counsel sought to cross-examine Crosby about his admissions before Judge Robinson, about crimes involving moral turpitude. His admissions at the suppression hearing were read into the record out of the presence of the jury. The trial judge refused the request of McGuire's counsel to cross-examine him about the admissions before the jury, basing his ruling on the witness's Fifth Amendment privilege against self-incrimination. He also noted that some of the crimes were admitted in a conclusory fashion.

Crosby also testified, in response to questions of the solicitor, that he had made an agreement with the police officer to take a polygraph examination concerning this case. He described the conversation with the officer in which the officer said to McGuire, concerning the polygraph examination, "well you are next." McGuire is purported to have replied that he had "nothing to hide." The officer later corroborated Crosby's agreement to take a polygraph examination and corroborated the claim that he had said McGuire would be next.

In speaking to the jury on the sceond day of the trial, over objection, the judge instructed it that discussion of the case in the jury room was all right, although it would be best if they did not discuss it until instructed to begin their deliberations. At the end of the second day of trial and throughout the remainder of the trial, the judge instructed the jury not to discuss the case among themselves at any time prior to final deliberation on the verdict.

Proper objection was made (1) to the exclusion of Crosby's admissions to prior crimes, (2) to reference to any polygraph examination, and (3) to the judge's instructions permitting the jury to discuss the case before all evidence had been submitted.

In refusing to permit counsel for McGuire to cross-examine Crosby concerning his admissions before Judge Robinson, we think the trial judge erred. That he made the statements admitting crimes involving moral turpitude was stipulated by the solicitor. Normally, the impeachment of a witness comes by way of introduction of a record of a conviction or of a guilty plea. When one is convicted or pleads guilty, the record speaks for itself, and the judgment of the court is conclusive. A witness may be impeached in other ways. There can be laid down no fixed rule as to what is admissible on cross-examination with respect to the past conduct of a witness who takes the stand. That is admissible which fairly tends to affect his credibility as a witness; that which does not is incompetent and may be prejudicial. The admissibility of evidence is largely in the discretion of the trial judge. Counsel should not be permitted to go on a fishing expedition in hopes of finding some misconduct involving moral turpitude by a witness. Merely asking a question that has no basis in fact may be prejudicial. Here, we have the statement of the witness, under oath, in the presence of a circuit judge, admitting that he has committed numerous felonies and offenses involving moral turpitude. The case hinged in large measure on the credibility of this witness. Under the narrow circumstances of this case, we think the judge erred in refusing to permit the cross-examination.

Nor can the trial judge's ruling be justified on the grounds that exclusion of the evidence was necessary in order to protect Crosby's Fifth Amendment privilege against self-incrimination. A judge may not invoke a witness's Fifth Amendment privilege; and, in any case, it is

well settled that a witness who is not also a defendant can invoke that privilege only after the incriminating question has been put. McCormick, *Evidence*, p. 289 (2d ed. 1972).

We also hold that reference to a polygraph examination was improper. In 29 Am. Jur. 2d, *Evidence*, § 296, we find the following:

"It is generally held in criminal prosecutions that evidence is not admissible that the accused was willing or unwilling to take a lie detector test. The contention that evidence of the accused's refusal to take a lie detector test tends to establish consciousness of guilt, and that evidence of the accused's willingness to take such a test shows consciousness of innocence, has been uniformly rejected. Since a guilty suspect would have nothing to lose by expressing a willingness to take a lie detector test, it being the general rule that the results could not be used as evidence against him, evidence of an accused's willingness or unwillingness to take such a test has little probative value, and thus is not properly admissible."

The record here presents a close question. From the testimony it is inferable that McGuire was offered a polygraph examination. It left the jury to speculate and to conclude that he refused to take the test. Mention of a polygraph test might arise in any one of many ways. The safer course would normally be to avoid any mention of a polygraph examination. If such is brought out in the testimony, the trial judge should be meticulous to see that no improper inference is created. See *State v. Britt*, 235 S. C. 395, 111 S. E. (2d) 669 (1959).

Inconsistent statements on the part of the judge, relative to the jury discussing the case before deliberations began, will not likely occur upon a new trial. We point out, however, that a jury should not begin discussing a case, nor deciding the issues, until all of the evidence, the argument of counsel, and the charge of the law is completed.

In *State v. Drake*, 31 N. C. App. 187, 229 S. E. (2d) 51 (1976), the court cited with approval (as do we), a precautionary instruction given to the jury after it had been impaneled, as follows:

" 'And lastly, the only proper place for a jury to deliberate upon any criminal case is in the Jury Room at the end of the whole case, that is, after the evidence is all presented, the lawyers have had their opportunity to make their final summations or arguments to you and the Court has had its opportunity to charge you on the applicable law. So, you should keep your mind open until reaching the Jury deliberation room and not decide the case prior to that time, when you can have the counsel and advice of your fellow jurors'."

The reason for the rule is apparent. The human mind is constituted such that when a juror declares himself, touching any controversy, he is apt to stand by his utterances to the other jurors in defiance of evidence. A fair trial is more likely if each juror keeps his own counsel until the appropriate time for deliberation.

In reaching the conclusion that a new trial must be held, we have considered only questions number II, III and IV, as taken from McGuire's brief. We have given consideration to questions I, V, VI, VII, VIII, IX and X, and have reached the unanimous conclusion that treatment of these questions involve no matter of precedent, and no error of law appears. Accordingly, these questions are determined adversely to McGuire under our Rule 23.

Reversed and remanded for a new trial.