UNITED STATES of America, Appellee,

v.

Edward Francis HARDESTY, Appellant.

No. 80–1780.

United States Court of Appeals,
Eighth Circuit.

Submitted April 3, 1981.

Decided April 6, 1981.

E. Timothy Shea, III, Kansas City, Mo., for appellant Edward F. Hardesty.

Ronald S. Reed, Jr., U. S. Atty., Thomas M. Larson, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and HENLEY, Circuit Judge.

PER CURIAM.

Edward Francis Hardesty was convicted by a jury on June 13, 1980, of receipt and possession of cartons of beef valued in excess of $100 which were taken from a trailer and which were part of an interstate shipment from Grand Island, Nebraska, to San Antonio, Texas, in violation of 18 U.S.C. § 659 (1976).[1] On August 6, 1980,

1. 18 U.S.C. § 659 provides in pertinent part: Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motortruck, or other vehicle * * * with intent to convert to his

the district court[2] sentenced Hardesty to five years' imprisonment. Hardesty asserts on appeal that the evidence adduced at trial was insufficient to prove that he knew the goods were stolen. We affirm the district court.

Glen D. Powell, a driver for Yellow Freight, Thermo Division, picked up a shipment of 583 cartons of beef at Monfort Packing Company, Grand Island, Nebraska, on March 14, 1980. The shipment was destined for San Antonio, Texas. En route to San Antonio, the driver stopped in Joplin, Missouri, and dropped the trailer loaded with beef at the Truckers' Inn on Saturday, March 15. The driver returned on Monday morning and discovered the trailer had been stolen.

William Powell,[3] who lived on a farm near Hughesville in Pettis County, Missouri, during March 1980, owned a Freightline truck-tractor which was available to be leased. Powell testified that he first met Hardesty sometime around March 11, 1980, a couple of days before the events in question. On Friday, March 14, 1980, Powell and his wife returned from a day-long trip to Sedalia and discovered the truck-tractor had been taken from the farm. Powell testified that he believed the truck may have been rented by William Barlish as discussed in an earlier phone conversation.

In the early morning hours of Sunday, March 16, James Hayes and Dave Oden drove the truck-tractor onto the Powell farm pulling the trailer that had been stolen from the Truckers' Inn in Joplin. Powell testified that Hardesty drove in behind the truck in his pickup and after the trailer was parked in Powell's shed, Hardesty, Hayes, and Oden left together. Powell further testified that Hardesty, Hayes, and Oden returned to the Powell farm later Sunday morning, and from that time until the following Tuesday evening, occupied themselves by hauling loads of beef away from the Powell farm. Glen Dawson sold some of the stolen meat for Hayes. On one occasion he went to the Powell farm to pick up more meat and saw Hardesty loading meat on a truck. Dawson testified that Hardesty visited him prior to trial and told him not to say anything.

During the time the stolen trailer was parked in Powell's shed, Powell testified, Hardesty gave Powell a check for $904.60 for the use of the shed and the truck. According to Powell, Hayes and Hardesty at one point appeared to have a disagreement about the amount of money coming in from the sale of the meat.

Powell testified that on Tuesday, March 18, Hardesty drove Elmer Shown's Ford automobile to the Powell farm. That same day Shown was using Hardesty's pickup and selling cartons of beef. Later Tuesday evening, March 18, the Sheriff of Pettis County and several deputies visited the Powell farm and arrested Hayes, Oden, and Powell. Shortly after the arrests, the Sheriff answered the telephone in the shed and recognized Hardesty's voice asking for "Dave or Jimmie." Hardesty and Shown arrived at the Powell farm in Hardesty's pickup truck within 45 minutes after the telephone call and were also arrested. They had approximately 900 pounds of the stolen beef in the rear of the pickup.

own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express or other property; or

*Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen;*
\* \* \*
\* \* \* \*

Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; but if the amount or value of such money, baggage, goods or chattels does not exceed $100 he shall be fined not more than $1,000 or imprisoned not more than one year, or both. [Emphasis added.]

2. The Honorable Elmo B. Hunter, United States District Judge, Western District of Missouri.

3. Glen Powell, the Yellow Freight driver, and William Powell are not related or acquainted.

■ Hardesty contends that the trial judge erred by denying his motion for judgment of acquittal at the close of the government's case because the government failed to establish that he knew the meat was stolen. Appellant argues that the government produced no "direct evidence" to establish knowledge and therefore the evidence was insufficient to warrant submission of the case to the jury. This contention is without merit because direct evidence of knowledge is not required.

■ We have held that criminal intent and guilty knowledge relate to the condition of the mind, and since the condition of the mind is rarely susceptible to direct proof, recourse must be to all pertinent circumstances. *United States v. Marley*, 549 F.2d 561, 563 (8th Cir. 1977); *United States v. Smallwood*, 443 F.2d 535, 541 (8th Cir.), *cert. denied*, 404 U.S. 853, 92 S.Ct. 95, 30 L.Ed.2d 93 (1971). Facts in issue in a criminal case, including knowledge, guilt, or innocence, may be proved by circumstantial as well as direct evidence. The facts and circumstances relied on by the government must be consistent with guilt, but they need not be inconsistent with any other reasonable hypothesis. It is enough to convict if the entire body of evidence is sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954); *see United States v. Kye*, 411 F.2d 120, 122 (8th Cir. 1969).

In *Aron v. United States*, 382 F.2d 965, 970 (8th Cir. 1967), this court stated the law on the permissible inference to be drawn from recently stolen property:

> The doctrine that possession of recently stolen property gives a permissible inference of knowledge on the part of the possessor that the property had been stolen, unless the possession thereof is accounted for in a reasonable and satisfactory manner, consistent with the circumstances of the possession, is a factually sound and necessary evidentiary rule.

Hardesty's account of the circumstances surrounding his possession of the meat was that he learned from his friend, William Barlish, that there was meat for sale at Powell's farm. According to Hardesty, Barlish related that the meat was for sale cheap because it was contaminated and quarantined. The government's witness, Barlish, corroborated Hardesty's statement as to why and where the meat was available.

■ Clearly, here there is ample support for the conclusion that Hardesty's account of the circumstances surrounding his possession of the meat was unsatisfactory. It is difficult to believe that Hardesty would knowingly purchase meat (some for his own consumption) which was contaminated or quarantined, regardless of how cheap it was. Consequently, the jury was entitled to find Hardesty's explanation incredible.

Hardesty also alleges that Powell's testimony was unreliable since it conflicted in certain minor respects with an earlier statement. The credibility of Powell's testimony was for the jury to determine. "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We find upon reviewing the record that the evidence demonstrates that Hardesty participated in the theft and actively worked toward disposing of the meat with full knowledge that it was stolen.

Affirmed.