UNITED STATES of America, Appellee,

v.

William M. HUMPHREY, Appellant.

UNITED STATES of America, Appellee,

v.

Robert L. GETHERS, Appellant.

UNITED STATES of America, Appellee,

v.

William E. MARSHALL, Appellant.

Nos. 81–2233, 81–2286 and 81–2287.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1982.

Decided Dec. 27, 1982.

Certiorari Denied Feb. 22, 1983.
See 103 S.Ct. 1230.

HENLEY, Senior Circuit Judge.

Appellants challenge their convictions for possession of, and conspiracy to possess, goods stolen from interstate shipment. We affirm the judgments of the district court.[1]

A trailer loaded with thirteen-speed truck transmissions, parts, and men's jackets was stolen from a Yellow Freight terminal in Shenandoah, Iowa, on August 22 or 23, 1980. On or about August 25, Dennis Braidick asked George Lutz and William Learn to help him move some transmissions. At some point during the last week of August, Braidick, Lutz, Learn, and appellant William Humphrey drove from Kansas City to a farm near Maysville, Missouri. There was evidence that appellant William Marshall, who managed the farm which was owned by his mother, was present when the men arrived sometime after midnight. The five men proceeded to unload a Yellow Freight trailer which was parked in a grove of trees. Some boxes of transmissions were loaded onto a flatbed truck; others were left on the ground. Lutz and Learn drove the flatbed truck back to Kansas City and parked it in Humphrey's garage at his residence in Grandview, Missouri. During the first week of September, Lutz returned to the farm in a rental truck. He loaded a number of transmissions, drove back to Kansas City, and parked the truck near an apartment belonging to appellant Robert Gethers.

On September 4 Humphrey attempted to sell some transmissions to undercover FBI agents, but negotiations broke down and the sale was not completed. Meanwhile, a second rental truck was obtained by Lutz with money furnished by Gethers. Braidick, Lutz, and Gethers used this second truck to transport four transmissions, which had been transferred from the first rental truck, to St. Joseph, Missouri, where Gethers contacted Thomas Custer and arranged a sale to Custer's employer Gerald Warner. Upon delivery of the transmissions to his shop, Warner tendered $4,000.00 to Gethers,

Elliott, Kaiser & Freeman by Mark G. Flaherty and Petra T. Tasheff, Kansas City, Mo., for appellants Gethers and Humphrey and on the brief for appellant Marshall.

Robert G. Ulrich, U.S. Atty., Linda L. Sybrant, Mark J. Zimmermann, Asst. U.S. Attys., Kansas City, Mo., for appellee.

Before HEANEY and ROSS, Circuit Judges, and HENLEY, Senior Circuit Judge.

---

1. The Honorable Howard F. Sachs, United States District Judge, Western District of Missouri.

but was told to give the money to Braidick. Lutz testified that Braidick later gave Gethers $1,000.00.

Two days later Braidick and Lutz returned to St. Joseph with fourteen additional transmissions. Warner, who had become alerted to the theft, subsequently contacted the authorities and instructed Braidick to pick up the transmissions. Braidick and Lutz were arrested on September 17 as they returned from St. Joseph with the transmissions. They directed the FBI to the farm in Maysville where, on the following day, agents found Marshall driving a tractor which was loaded with several transmissions. Marshall cooperated by showing where the remaining goods were located. On this same day, Gethers called Warner. During the conversation, which Warner taped, Gethers asked whether a Yellow Freight dock foreman named Davis had been "smelling around." Gethers later called Custer and told him to "play it cool" if the FBI came to see him.

Gethers, Humphrey and Marshall were tried before a jury and convicted of possession of, and conspiracy to possess, goods stolen from interstate shipment in violation of 18 U.S.C. §§ 659 and 371.[2]

 Appellants' first arguments on appeal concern the sufficiency of the evidence. Gethers asserts that there was insufficient evidence that he was in possession of the goods. All appellants contend that there was insufficient evidence that they knew the goods were stolen. They also attack the sufficiency of the evidence supporting the findings of the existence of a conspiracy and of their participation in it. We find these contentions meritless.

All appellants demonstrated the dominion and control over the goods necessary to establish possession, either by physically handling or transporting the goods, or by engaging in negotiations for their sale. *See United States v. Anderson,* 552 F.2d 1296, 1301 (8th Cir.1977); *United States v. Dugan,* 477 F.2d 140 (8th Cir.1973). Possession of recently stolen goods gives rise to a permissible inference of knowledge that the goods are stolen unless possession is otherwise reasonably explained. *United States v. Hardesty,* 645 F.2d 612, 614 (8th Cir. 1981). This inference is strengthened in the present case by the clandestine nature of the midnight transfer of goods from the trailer hidden in a grove of trees and by certain statements allegedly made by appellants indicating that they knew the goods were stolen.[3] As for the conspiracy, we think the evidence of appellants' cooperative efforts to transfer and to sell the goods demonstrates both the existence of an agreement and appellants' participation in attempting to carry it out. *See United States v. Brown,* 584 F.2d 252, 262 (8th Cir.1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979).

Appellants next contend that the trial court erred in sending certain isolated instructions to the jury without rereading all the instructions. Specifically, the court sent, at the jury's request, a copy of the instruction containing the indictment. The objection was raised that the indictment would confuse the jury and prejudice them against defendants. The jury then asked for a copy of all instructions. Due to the condition of the instructions after numerous handwritten changes, the court responded that the full text could not be provided for at least an hour. The court added that the jury could rehear the instructions, but reminded them that a rereading would take about forty-five minutes, whereupon the jury requested the definition of possession which the court supplied over objection.

2. Learn and Lutz pleaded guilty and testified against appellants. Braidick was a fugitive at the time of trial.

3. Gethers cautioned Warner and Custer about possible investigation. Learn testified that Marshall stated on the night the trailer was unloaded that he wanted "to get rid of the stuff" as soon as possible so his neighbor would not see it. Agent Torres testified that during the unsuccessful sale negotiations, Humphrey assured him that drivers would be furnished who would avoid truck stops and weigh stations, and that Humphrey stated that before going to see the transmissions, the potential buyer would have to change clothes and be blindfolded.

This court, in *United States v. Wedelstedt,* 589 F.2d 339 (8th Cir.1978), *cert. denied,* 442 U.S. 916, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), held that submission of the indictment to the jury was within the discretion of the trial court as long as the jury was instructed that the indictment is not evidence. *Id.* at 350. It is not apparent from the record whether the instruction submitted to the jury included such an admonition. However, the court emphasized during oral instruction after arguments that the indictment was merely a formal charge and was not evidence in any way of the guilt of defendants. Although such an instruction might well have been repeated when the indictment was submitted to the jury, in present circumstances a failure to so instruct, if indeed there was such a failure, does not amount to reversible error.

With respect to the instruction defining possession, appellants argue that the court was required to submit or reread all instructions. While at times good practice may call for rereading all instructions, we are aware of no basis for an inflexible rereading requirement. The cases relied on by appellants suggest that if the court reinstructs or submits supplementary instructions to the jury on issues favorable to the government, then the court must provide reinstruction or additional instruction favorable to defendant. *See United States v. Carter,* 491 F.2d 625, 634 (5th Cir.1974); *Bland v. United States,* 299 F.2d 105, 108 (5th Cir.1962). The instruction submitted to the jury in the present case simply defined possession. It was favorable neither to the government nor to appellants. We find no abuse of discretion.

Although appellants Marshall and Humphrey made no motion to strike, they now contend that they were denied a fair trial because the court failed to strike Learn's testimony concerning the events of the night the trailer was unloaded. Learn asserted his fifth amendment right on cross-examination and refused to answer certain questions regarding other crimes in which Learn allegedly had participated. In reconciling the possible conflict between a witness' fifth amendment right against self-incrimination and a defendant's sixth amendment right to a fair trial, the court should consider the significance of the witness' testimony and the prejudice to defendant. *United States v. Gould,* 536 F.2d 216, 221–22 (8th Cir.1976). That is, if the witness' refusal to answer prevents defendant from directly assailing the truth of the witness' testimony, the court should strike at least the relevant portion of the testimony. If, on the other hand, the refusal relates to collateral matters, such as credibility, the danger of prejudice to defendant is considerably less, and the witness' testimony may not need to be stricken. *Id.*

The record indicates that the evidence sought pursuant to the questions concerning other crimes was related to Learn's credibility. Humphrey and Marshall submit on appeal that they hoped to show that Learn was involved in these other crimes at the time the trailer was unloaded, and that he could not, therefore, have identified Humphrey and Marshall as being present. However, we do not know from the record the exact date of the midnight unloading; nor have appellants shown the exact date or dates when Learn allegedly was involved in other crimes. Furthermore, Lutz identified Humphrey as being present at the unloading and testified that a man introduced as Marshall was also there. We cannot say that appellants were prevented from directly attacking Learn's testimony, that they were significantly prejudiced by Learn's testimony, or that the court committed reversible error in failing to strike Learn's testimony.[4]

Gethers argues that the court erred in sending the tape of his conversation with Warner to the jury. The court, however, has considerable discretion in deciding whether to send exhibits to the jury

---

4. Nor do we find prejudicial error in the court's refusal to allow defense counsel to comment in closing argument on Learn's refusal to answer certain questions. *See Billeci v. United States,* 87 U.S.App.D.C. 274, 184 F.2d 394, 398 (1950).

room.[5] *United States v. Parker,* 491 F.2d 517, 521 (8th Cir.1973), *cert. denied,* 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974). We find no abuse of that discretion.

Finally, we find no merit in Gethers' and Humphrey's objections to certain statements made by the prosecutor during closing argument.

From the foregoing, it follows that the judgment of the district court should be, and it is, affirmed.

5. We note that the jury also requested and received all pictures admitted into evidence.