UNITED STATES of America

v.

**Francisco Martin DURAN, Defendant.**

**Crim. No. 94–447 (CRR).**

United States District Court,
District of Columbia.

April 7, 1995.

Eric A. Dubelier, Brenda J. Johnson, and Chrisellen R. Kolb, Asst. U.S. Attys., Washington, DC, along with Eric H. Holder, Jr., U.S. Atty., for the District of Columbia, on behalf of the U.S.

A.J. Kramer, Federal Public Defender, and Leigh A. Kenny, Asst. Federal Public Defender, Washington, DC, on behalf of the defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

On March 20, 1995, the first day of trial in the above-captioned case, the Court was advised that a Government witness, David Millis, wished to assert his Fifth Amendment privilege against self-incrimination with respect to any questions regarding his alleged involvement with illegal drugs subsequent to Mr. Millis' last encounter with the Defendant on September 30, 1994. After extensive colloquies with counsel, the Court appointed a lawyer for Mr. Millis to advise him of his rights under the Fifth Amendment. After consulting with his client, counsel for Mr. Millis represented to the Court that Mr. Millis had a valid Fifth Amendment claim. The Court agreed.

The question then arose as to whether counsel for the Defendant could nonetheless inquire of Mr. Millis' alleged drug use after September 30, 1994, knowing of Mr. Millis' intent to assert his privilege. Pursuant to the Court's direction, both sides submitted a Memorandum on the issue, and the Court orally ruled on March 21, 1995 that counsel for the Defendant could not ask questions of the witness regarding use of illegal drugs subsequent to the time of Mr. Millis' acquaintance with the Defendant. The Court also declined to strike Mr. Millis' testimony, as the Defendant had alternatively requested. This Memorandum Opinion shall set forth the Court's reasons for its ruling.

### DISCUSSION

In his Memorandum, the Defendant argued that the Court should either preclude Mr. Millis from testifying or allow counsel for the Defendant to ask questions before the jury to which Mr. Millis would assert his privilege. The Court finds no merit to either request.

### I. NEITHER THE DEFENDANT NOR THE GOVERNMENT MAY ASK QUESTIONS OF A WITNESS SOLELY FOR THE PURPOSE OF REQUIRING THE WITNESS TO INVOKE HIS OR HER PRIVILEGE BEFORE THE JURY

█ Although a witness other than a criminal defendant cannot properly invoke the Fifth Amendment privilege against self-incrimination to avoid appearing at trial altogether, he or she can invoke the privilege to avoid answering incriminating questions. *Allen v. Illinois*, 478 U.S. 364, 368, 106 S.Ct. 2988, 2991–92, 92 L.Ed.2d 296 (1986). Moreover, "[i]t is well settled that the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense." *Bowles v. United States*, 439 F.2d 536, 541 (D.C.Cir.1970) (en banc), *cert. denied*, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971).

In *Bowles*, counsel for the defendant argued that the fact that a witness had invoked his privilege should be brought to the attention of the jury. The Court disagreed, observing that "the probative value of the event is almost entirely undercut by the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-

examination." *Id.* at 542. The Court further explained that "an obvious corollary to these precepts is the rule that a witness should not be put on the stand for the purpose of having him exercise his privilege before the jury [as t]his would only invite the jury to make an improper inference." *Id.* (citation omitted). *See also San Fratello v. United States,* 340 F.2d 560, 565 (5th Cir.1965) (reversible error in permitting prosecution to call witness so as to require her to claim Fifth Amendment privilege in the presence of the jury).[1]

Such is precisely what the Defendant sought in this case, however. Knowing that Mr. Millis would assert his privilege as to any inquiry about his alleged drug use after September 30, 1995, defense counsel nevertheless wanted to ask potentially incriminating questions solely for the purpose of allowing the jury to hear Mr. Millis invoke the Fifth Amendment. Because the only conceivable reason for seeking such a procedure was an impermissible one, namely, to invite the jury to draw inferences from Mr. Millis' decision to exercise his constitutional right against self-incrimination, the Court finds that the Defendant was not entitled to it. *See United States v. Reese,* 561 F.2d 894, 899 (D.C.Cir.1977) (defendant has no right to put witness on the stand simply to require him to assert the privilege).[2]

## II. BECAUSE THE ANTICIPATED CROSS–EXAMINATION RELATED TO A COLLATERAL CREDIBILITY ISSUE AND THE JURY HAD AMPLE INFORMATION TO APPRAISE THE BIAS, MOTIVE AND MEMORY OF MR. MILLIS, THE COURT DECLINED TO STRIKE HIS TESTIMONY

While the Defendant's contention that the jury should hear Mr. Millis invoke his privilege is contrary to law, the Court, in the exercise of its discretion, found no basis for striking Mr. Millis' testimony. *See United States v. Viera,* 819 F.2d 498, 500 (5th Cir. 1987) ("[c]ontrol over the conduct of the trial, including the scope of permissible cross-examination, is squarely within the discretionary powers of the district court"). Although the Defendant contended that cross-examination of Mr. Millis on his drug use after his last meeting with Mr. Duran was important for assessing Mr. Millis' motive, credibility, and memory, the Court finds that " 'the jury had sufficient information to appraise the bias and motives of the witness.' " *Id.* at 501 (quoting *United States v. Ray,* 731 F.2d 1361, 1364–65 (9th Cir.1984) (internal quotation marks omitted)).

"Striking the testimony of a witness is a drastic remedy [which] is not to be lightly done." *Lawson v. Murray,* 837 F.2d 653, 656 (4th Cir.), *cert. denied,* 488 U.S. 831, 109

---

1. While the Defendant attempts to distinguish *Bowles* as involving a "blanket assertion" of the privilege, versus a "selective invocation" of the Fifth Amendment, courts have made no such distinction. Defendant's Memorandum Re: Witness' Fifth Amendment Privilege [hereinafter "Defendant's Memorandum"] at 3. *See United States v. Victor,* 973 F.2d 975, 979 (1st Cir.1992) (witness' refusal to answer a question, particularly in the context of cross-examination, could lead a jury to draw impermissible inferences); *United States v. Vandetti,* 623 F.2d 1144, 1148 (6th Cir. 1980) (no right to benefit from any inferences the jury may draw from the witness' assertion of the privilege "alone or in conjunction with questions that have been put to him") (quoting *United States v. Lacouture,* 495 F.2d 1237 (5th Cir.) *cert. denied,* 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974)); *United States v. Castillo,* 615 F.2d 878, 884 (9th Cir.1980) (prosecutor improperly suggested that the jury find witnesses' assertion of the Fifth Amendment as to particular questions to be the equivalent of affirmative answers to the potentially incriminating questions).

2. Counsel for the Defendant further argued that precluding cross-examination of Mr. Millis as to matters about which he would assert his Fifth Amendment privilege would deny the Defendant his Sixth Amendment right to compulsory process. Defendant's Memorandum at 1 (citing *Davis v. Alaska,* 415 U.S. 308, 320, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347 (1974)). However, *Davis* involved the refusal to permit cross-examination of a witness regarding a prior felony conviction, while here the Defendant "made no attempt to question [Millis] as to prior convictions," if any. *United States v. Seifert,* 648 F.2d 557, 562 (9th Cir.1980). Moreover, as the *Seifert* court noted, "[t]he Court in *Davis* recognized that the trial court has a duty protect a witness from 'an attempted invasion of his constitutional protection from self-incrimination, properly invoked.' " *Id.* (quoting *Davis,* 415 U.S. at 320, 94 S.Ct. at 1112). As in *Seifert,* "[t]hat is what the court did here." *Id.* Accordingly, the Court finds no merit to the Defendant's suggestion that his Sixth Amendment rights were violated in this case, as he was "fully able to present [his] defense." *Id.*

S.Ct. 87, 102 L.Ed.2d 63 (1988). Thus, "[a]ny action by the court may be inappropriate when the witness invokes the fifth amendment privilege to avoid cross-examination on purely collateral matters." *Id. Cf. Vandetti,* 623 F.2d at 1149 (as prejudice may result from inferences drawn if a witness takes the Fifth Amendment, trial judge must balance competing interests under Fed.R.Evid. 403). Because Mr. Millis asserted his privilege as to a collateral issue, the Court finds that the Defendant's ability to cross-examine Mr. Millis for purposes of challenging his credibility, memory, or motive was not impaired by the Court's ruling on Mr. Millis' testimony.

The Defendant cited *United States v. Humphrey,* 696 F.2d 72 (8th Cir.1982), *cert. denied,* 459 U.S. 1222, 103 S.Ct. 1230, 75 L.Ed.2d 463 (1983), to support his claim that the questions he wished to ask of Mr. Millis involved " 'direct' matters, as opposed to 'collateral' matters." Defendant's Memorandum at 3. Curiously, however, the passage the Defendant quotes from *Humphrey* serves rather to bolster the Government's argument against striking Mr. Millis' testimony. The *Humphrey* Court observed that, "[i]f ... the refusal [to answer] relates to collateral matters, *such as credibility,* the danger of prejudice to defendant is considerably less, and the witness' testimony may not need to be stricken." *Humphrey,* 696 F.2d at 75 (emphasis added). Citing this very language, the Defendant nevertheless urged the Court to preclude Mr. Millis from testifying precisely because "the defendant must be able to test his credibility fully." Defendant's Memorandum at 3.

As *Humphrey* suggests, it is because the anticipated cross-examination related to a collateral credibility issue that the Court, in the exercise of its " 'wide discretion,' " declined to grant the Defendant's request. *United States v. Seifert,* 648 F.2d 557, 562 (9th Cir.1980) (quoting *United States v. Star,* 470 F.2d 1214, 1217–18 (9th Cir.1972)). *See also United States v. Esparsen,* 930 F.2d 1461, 1469 (10th Cir.1991) ("When the refusal to answer cross-examination questions involves collateral matters ... the testimony should not be struck."), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992).

While Mr. Millis' invocation of his Fifth Amendment privilege was limited to questions regarding his alleged drug use subsequent to the time of his relationship with the Defendant, defense counsel extensively cross examined Mr. Millis regarding his use of illegal drugs with the Defendant. The Court therefore cannot find that the Defendant was prejudiced one whit by the Court's recognition of Mr. Millis' Fifth Amendment privilege.

Indeed, Mr. Millis testified that he smoked marijuana with the Defendant "at lunchtime a couple of times" and "after work a lot of the times." Tr. March 21, 1995, at 35. He further stated that he "got it for" Mr. Duran from a neighbor and usually paid for the drugs because he "would always get a better deal" than Mr. Duran *Id.* at 37, 38. Mr. Millis explained:

> I primarily don't buy the stuff. You know, I got it around me. You know, if people want to come to me and they ask me, yeah, can you get me some, sure, I can get them some if they want it but, you know, me, I don't buy it because I can get it free.

*Id.* at 38.

Such cross-examination was more than sufficient to allow the Defendant to challenge Mr. Millis' credibility and, of particular importance, Mr. Millis' memory regarding his conversations with the Defendant. Finally, the Defendant was further able to impugn Mr. Millis' credibility and question his motive by inquiring of Mr. Millis' contract to "sell his story" to a tabloid television show for $5,000. *Id.* at 23, 28–34. Upon defense counsel's inquiry, Mr. Millis testified that he "called all kinds of stations" because he "was going for the highest bidder." *Id.* at 28, 29. He explained:

> I called all the stations. I said—I didn't give out my name. I didn't say anything. All I said was I have information on Mr. Duran, if you want—I mean, who can I get in touch with to tell somebody about that because I wanted basically money when I did that. I wasn't going to go on T.V. for, I mean, anything, you know.... I don't like anything to do with the press but basically I did this for the money.

*Id.* at 31. Later, when called as a defense witness, Mr. Millis acknowledged that it was his understanding that in order to collect the $5,000 under the contract with the television show he had to say that Mr. Duran intended to kill the President. Tr. March 27, 1995, at 93.

Under these circumstances, the Court cannot find that the Defendant was "prevented from directly attacking [Millis'] testimony" by virtue of the Court's decision not to strike the testimony. *Id.*[3] Nor, for that matter, was there any prejudice to the Defendant in the Court's refusal to require Mr. Millis to assert his privilege before the jury, as such an implicit attack on his credibility would have been merely cumulative in light of the testimony that was developed on cross-examination. *See Seifert,* 648 F.2d at 561 (further impeachment by having witness refuse to answer particular question before the jury would have been cumulative). Rather, the cross-examination that was permitted defense counsel was more than adequate to develop before the jury issues of Mr. Millis' motive and credibility and to challenge his memory of the relevant time period. *Cf. United States v. Sampol,* 636 F.2d 621, 670 (D.C.Cir.1980) (district court properly barred defense counsel from asking government witness about topic "of limited relevance" where the witness would likely have asserted the privilege), *United States v. Yip,* 930 F.2d 142, 146 (2d Cir.) (no error in refusing to strike testimony of witness who claimed his Fifth Amendment privilege regarding a collateral matter that was not the subject of direct examination and that related solely to the witness' credibility), *cert. denied,* 502 U.S. 868, 112 S.Ct. 197, 116 L.Ed.2d 157 (1991).

---

**3.** *United States v. Kinnard,* 465 F.2d 566 (D.C.Cir.1972), upon which the Defendant also relies, is inapposite to this case. The Defendant asserts that *Kinnard* stands for the proposition that cross-examination regarding a witness' drug use is so critical to assessing credibility that a special instruction may be required. Defendant's Memorandum at 1.

In *Kinnard,* however, the witness whose drug use was in question was a paid Government informer whose testimony was "without corroboration in some significant aspect of the case." *Kinnard,* 465 F.2d at 569. The Court of Appeals for this Circuit thus observed that "informers have a motive to lie [and] this danger creates the

## CONCLUSION

For the foregoing reasons, the Court denied the Defendant's request that the testimony of David Millis be stricken or, alternatively, that the Court compel Mr. Millis to exercise his Fifth Amendment privilege against self-incrimination in the presence of the jury.

necessity for a special instruction on their unreliability." *Id.*

The Court finds the Defendant's reliance on *Kinnard* wholly unpersuasive. Unlike in the instant case, *Kinnard* involved the particular circumstance of a paid Government informer who was also a drug addict. Moreover, *Kinnard* did not even address the Fifth Amendment issue at bar. In any event, the Court of Appeals later clarified in *United States v. Spriggs,* 996 F.2d 320, 325 (D.C.Cir.1993), that it "has never adopted a rule requiring a trial court sua sponte to give a special charge regarding the credibility of an informer who is also a drug addict."