493 S.E.2d 821

**The STATE, Respondent,**

v.

**Herman Lee HUGHES, Jr., Appellant.**

**No. 24704.**

Supreme Court of South Carolina.

Heard May 20, 1997.
Decided Oct. 27, 1997.

148

Joseph L. Savitz, III, Deputy Chief Attorney, South Carolina Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Columbia, and Solicitor Walter M. Bailey, Summerville, for respondent.

WALLER, Justice:

Appellant, Herman Lee Hughes, Jr., was convicted of murder, assault and battery with intent to kill (ABIK), armed robbery and grand larceny of an automobile. He was sentenced to death for murder, twenty-five years consecutive for ABIK, 25 years consecutive for armed robbery, and five years concurrent for grand larceny. This appeal consolidates his direct appeal with the mandatory review provisions of S.C.Code Ann. § 16–3–25(C) (1985). We affirm.

## FACTS

On March 18, 1994, Hughes and a cohort, Kelsey Pearce, robbed the Blue Diamond Casino, a video poker parlor in Orangeburg. Pearce remained outside while Hughes requested change from the employee of the casino, twenty year old, Kenneth Pressley. When Pressley opened the cash drawer, Hughes pulled a gun and told Pressley to give him the money. He simultaneously told Pressley's seventeen year old girlfriend, Kelly Hoffman, who was sitting behind the desk on the telephone, to get off the phone. Hughes then asked Pressley for his car keys. As Pressley handed over the keys, Hughes shot him in the head. He then turned and shot Hoffman in the chest. He shot Pressley in the head again, and then shot

Hoffman in the face. Finally, he shot Pressley in the head a third time. Hughes took the money from the cash draw, then turned out the lights as he left the casino. He and Pearce departed in Pressley's Mazda RX–7. Hoffman survived the assault, Pressley died.

Hughes and Pearce were subsequently arrested and charged with the crimes. At Hughes' trial,[1] defense counsel sought to call Pearce as an adverse witness. The solicitor advised that Pearce would not testify for the state and was planning to assert his Fifth Amendment privilege against self incrimination. Pearce asserted the privilege during an *in camera* hearing. The trial court ruled that Pearce was "unavailable" to testify such that cross-examination before the jury was inappropriate. Hughes was not permitted to call Pearce to the stand for the purpose of requiring him to assert his Fifth Amendment privilege.

## ISSUE

Did the trial court err in refusing to permit Hughes to call Pearce to the witness stand for the sole purpose of requiring Pearce to assert his Fifth Amendment privilege before the jury?

## DISCUSSION

Hughes asserts the trial court's refusal to require Pearce to assert his privilege against self-incrimination before the jury denied him of the opportunity to present relevant evidence in mitigation under the Eighth Amendment and to rebut the state's case. He cites two cases of this Court in support of his contention. *See State v. McGuire*, 272 S.C. 547, 253 S.E.2d 103 (1979) and *State v. Perry*, 279 S.C. 539, 309 S.E.2d 9 (1983).[2]

In *State v. McGuire*, 272 S.C. 547, 253 S.E.2d 103 (1979), the defendant was indicted along with a co-defendant, Crosby, for armed robbery and murder. Crosby was granted immunity from prosecution in exchange for testifying. During an *in*

---

1. Hughes and Pearce were tried separately.

2. We granted the State's motion to argue against the precedent of these cases.

*camera* suppression hearing prior to McGuire's trial, Crosby admitted to several crimes of moral turpitude. At trial, Crosby testified and implicated McGuire. To impeach Crosby's credibility, defense counsel sought to cross-examine him about his prior admissions to crimes of moral turpitude. The judge refused, basing his ruling on Crosby's Fifth Amendment privilege against self-incrimination. This Court held that, in light of the admissions under oath to crimes of moral turpitude, McGuire should have been permitted to cross-examine Crosby concerning those admissions. We went on to state:

> Nor can the trial judge's ruling be justified on the grounds that exclusion of the evidence was necessary in order to protect Crosby's Fifth Amendment privilege against self-incrimination. A judge may not invoke a witness's Fifth Amendment privilege; and, in any case, it is well settled that a witness who is not also a defendant can invoke that privilege only after the incriminating question has been put.

272 S.C. at 550–551, 253 S.E.2d 103. The rationale for *McGuire* is that the privilege against self-incrimination is **personal** and may not be invoked by, or on behalf of, a third person. *See* 1 McCormick on Evidence, § 120 (1992); 98 C.J.S. *Witnesses* § 451 (1957). It does not, however, follow from the holding of *McGuire* that assertion of the privilege must be made **before the jury**. In *McGuire*, the witness **never** asserted his privilege, either *in camera* or otherwise, when the judge *sua sponte* asserted it for him.

Nevertheless, in *State v. Perry*, 279 S.C. 539, 309 S.E.2d 9 (1983), this Court found error in the trial judge's refusal to allow the defendant to call Benjamin Ashford, who was charged with the same crime as the defendant, to claim his Fifth Amendment privilege before taking the stand. Citing *State v. McGuire*, the Court reversed and remanded for a new trial. Essentially, the holding of *Perry* requires a witness to be called solely for the sake of invoking the Fifth Amendment privilege, for the purpose of permitting the jury to infer wrongdoing from that assertion. We find the holding in *Perry* is an unwarranted extension of *McGuire*.

 It is desirable the jury not know that a witness has invoked the privilege against self-incrimination since neither party is entitled to draw any inference from such invocation.

1 McCormick on Evidence, § 137 (1992). *See also* 3 Wharton's Criminal Procedure, § 354 (13th Ed.1991)(no inference may be drawn from witnesses' assertion of privilege since exercise of right is personal to witness and should not be used to hurt or help a third person); 98 C.J.S. *Witnesses* § 455 (general rule that no adverse inference may be drawn from witness' assertion of the privilege).

 Most courts addressing the issue hold that it is improper for the prosecution to put an accomplice on the stand for the purpose of wringing from him a refusal to testify on the ground of privilege. 98 C.J.S. *Witnesses* § 434(b); 1 McCormick on Evidence, § 137 at p. 513 (misconduct sufficient to render a conviction invalid might occur if the prosecution, knowing that a witness will invoke the privilege, calls that witness before the jury and then makes a "conscious and flagrant attempt to build its case out of inferences arising from the use of the privilege"). *See also U.S. v. Swanson,* 9 F.3d 1354 (8th Cir.1993); *U.S. v. Chapman,* 866 F.2d 1326 (11th Cir.1989) *cert. denied* 493 U.S. 932, 110 S.Ct. 321, 107 L.Ed.2d 312; *U.S. v. Doddington,* 822 F.2d 818 (8th Cir.1987); *Hamm v. State,* 301 Ark. 154, 782 S.W.2d 577 (1990); *Clayton v. Commonwealth,* 786 S.W.2d 866 (Ky.1990); *Bridge v. State,* 726 S.W.2d 558 (Tex.Cr.App.1986). *See generally* Annotation, *Propriety and Prejudicial Effect of Prosecution's Calling as Witness, to Extract Claim of Self–Incrimination Privilege, One Involved in Offense Charged Against Accused,* 19 A.L.R.4th 368 (1983). In *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), the United States Supreme Court found error in such an attempt under two circumstances; first, where the prosecution "makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege;" second, where the "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination...." 373 U.S. at 186–187, 83 S.Ct. at 1154. *See also People v. Pirrello,* 166 Ill.App.3d 614, 117 Ill.Dec. 238, 243–244, 520 N.E.2d 399, 404–405 (1988)(reversible error for prosecutor to compel witness to claim privilege before jury when effect is to suggest, by implication or innuendo, that the defendant is guilty of a crime); 81 Am.Jur.2d *Witnesses* § 121 (calling witness to stand solely to have him claim Fifth

Amendment privilege in presence of jury may have disproportionate impact and permit inference from refusal to testify, adding weight to case in form not subject to cross-examination).

Although most of the cited cases deal with the **prosecution's** attempt to draw improper inferences, it has been recognized that **neither the state nor the defendant** should be allowed to call witnesses who either side knows will invoke the Fifth Amendment in front of the jury and then be subject to inferences in a form not subject to cross-examination. *State v. Heft*, 185 Wis.2d 288, 517 N.W.2d 494, 501 (1994). *See also U.S. v. Crawford*, 707 F.2d 447 (10th Cir.1983); *U.S. v. Beechum*, 582 F.2d 898 (5th Cir.1978) *cert. denied* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); *Hamm v. State*, 301 Ark. 154, 782 S.W.2d 577 (1990); *State v. Polsky*, 82 N.M. 393, 482 P.2d 257 (1971) *cert. denied* 404 U.S. 1015, 92 S.Ct. 688, 30 L.Ed.2d 662 (1972); *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865 (1971) (witness' assertion of privilege may not be made basis of **any** inference before the jury, favorable to either the prosecution or the defense); *United States v. Duran*, 884 F.Supp. 573 (D.D.C.1995) (neither defendant nor government may ask questions of witness solely for purpose of requiring witness to invoke privilege before jury). Further, many courts have found no abuse of discretion in a trial court's refusal to permit defense counsel to call a codefendant to the stand **solely** to require them to assert the privilege in the presence of the jury. *State v. Gerard*, 685 So.2d 253 (La.App.1996); *People v. Yager*, 226 A.D.2d 830, 640 N.Y.S.2d 642 (N.Y.App.Div.1996); *State v. Robinson*, 253 N.J.Super. 346, 601 A.2d 1162 (1992); *Clayton v. Commonwealth*, 786 S.W.2d 866 (Ky.1990); *State v. Eichstedt*, 20 Conn.App. 395, 567 A.2d 1237 (1989). Finally, it has been recognized that when a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand. *U.S. v. Kaplan*, 832 F.2d 676 (1st Cir.1987) *cert. denied* 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988). *See also State v. Hatter*, 700 S.W.2d 138 (Mo.1985) (finding no error in trial court's refusal to require witness to take stand merely for purpose of asserting privilege).

Here, defense counsel knew Pearce would invoke his privilege against self-incrimination and sought to put him on the

stand **solely** to allow the jury to draw adverse inferences from his refusal to testify. We concur with the above-cited jurisdictions that such an inference is impermissible. Accordingly, to the extent *State v. Perry* may be read to require the calling of a witness **solely** for the sake of invoking his or her Fifth Amendment privilege,[3] it is hereby prospectively modified from the date of this opinion.[4]

■ As our modification of *Perry* is prospective only, it is clear that, under the law as it existed at the time of trial, Hughes should have been permitted to put Pearce on the stand for the purpose of invoking his Fifth Amendment privilege. However, we find any error in the trial court's refusal to do so in this case was harmless beyond a reasonable doubt.

In *State v. Gaskins,* 284 S.C. 105, 326 S.E.2d 132 (1985) *cert. denied* 471 U.S. 1120, 105 S.Ct. 2368, 86 L.Ed.2d 266, *overruled in part on other grounds State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991), this Court recognized that an error under *State v. Perry* may be deemed harmless where the testimony would have been cumulative to other testimony admitted. *See also* 1 McCormick on Evidence § 137 at p. 513 (whether other evidence has been introduced on those matters as to which the jury might draw an inference from the witness's testimony is a factor in determining harmless error); *State v. Heft, supra* (defendant not deprived a fair trial notwithstanding refusal to require witness to assert privilege before jury, where defendant was afforded opportunity to present complete defense and evidence supporting her theory).

---

**3.** We express no opinion as to the situation in which, for example, a witness testifies for the prosecution on direct exam, then asserts the privilege on cross-exam. Some courts hold that where there is a reasonable expectation the witness will provide some testimony in addition to invoking the privilege, the court may require the witness to take the stand. *Kaplan, supra; State v. Sanders,* 842 S.W.2d 170 (Mo.1992). As that is not the situation presently before this Court, we decline to address it.

**4.** We find it unnecessary to modify *McGuire.* *McGuire* stands only for the proposition that a trial judge may not invoke a witness' Fifth Amendment privilege. There is no reason such a privilege may not be invoked *in camera.*

Here, during the *in camera* testimony, counsel inquired whether, after Hughes had shot the victims twice, Pearce had then gone into the Blue Diamond and shot Pressley twice. Pearce was also questioned whether he had obtained the gun used in the crime from his uncle, and whether he had talked Hughes into robbing the Blue Diamond. Essentially, Hughes claims he should have been permitted to ask these questions in front of the jury in order that the jury could infer that Pearce was more the aggressor of the two and that Pearce had also been a shooter, on the theory that perhaps the jury would have found this "testimony" mitigating and imposed a life sentence.

We find no prejudice whatsoever to Hughes from omission of this "testimony." At no point during trial did Hughes contest his guilt. During opening argument, counsel conceded Hughes' guilt under the law of felony murder, and that it did not matter who had the gun or who pulled the trigger. It was undisputed at trial that Hughes and Pearce had obtained the murder weapon from Hughes' 23 year old uncle, Henry Daniel Owens. Further, there was testimony that Pearce was the more aggressive of the two and that Hughes was more passive. Finally, there was testimony from two witnesses that Pearce had told them he had "done the crime," and that Pearce had told one witness that he had shot Kelly Hoffman and another guy. Further, during closing argument, counsel for Hughes stressed to the jury that Pearce had been a shooter. Finally, at the sentencing phase closing, counsel argued that Pearce was the aggressor, that Hughes was the passive one, and that the whole thing would not have happened but for Kelsey Pearce. He also reiterated his theory that Pearce may have also been a shooter. In sum, testimony was presented as to each of the questions Hughes proposed to ask Pearce, and the matter was rigorously argued to the jury in an attempt to mitigate punishment. We find Hughes was not denied his right to present evidence in mitigation, and Pearce's "testimony" would have been merely cumulative to other testimony presented. Accordingly, any error under *Perry* was harmless.

## CONCLUSION

We prospectively modify *State v. Perry* to the extent it permits the calling of a witness solely for the sake of invoking

his or her Fifth Amendment privilege. We affirm Hughes' convictions, however, as we find any error in the trial court's refusal to permit Hughes to call Pearce to the stand in this case was harmless beyond a reasonable doubt.

Finally, we find the death sentence in this case is proportionate to that in similar cases and is neither excessive nor disproportionate to the crime. *State v. Bell*, 305 S.C. 11, 406 S.E.2d 165 (1991) *cert. denied* 502 U.S. 1038, 112 S.Ct. 888, 116 L.Ed.2d 791 (1992)(murder and armed robbery of school principal in Anderson); *State v. Sims*, 304 S.C. 409, 405 S.E.2d 377 (1991) *cert. denied* 502 U.S. 1103, 112 S.Ct. 1193, 117 L.Ed.2d 434 (1992)(robbery and murder of Domino's Pizza employee); *State v. Green*, 301 S.C. 347, 392 S.E.2d 157, *cert. denied* 498 U.S. 881, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990)(robbery and murder of woman outside a mall in Charleston). Accordingly, Hughes' convictions and sentences are

**AFFIRMED.**

TOAL, MOORE and BURNETT, JJ., concur.

FINNEY, C.J., dissenting in separate opinion.

FINNEY, C.J., dissenting:

I respectfully dissent and would remand this case for a new sentencing hearing at which appellant would be permitted to call and examine Pearce before the jury.

First, I disagree with the majority's adoption of a rule which would bar a defendant from ever calling a witness solely for the purpose of having the witness invoke his Fifth Amendment privilege. My research indicates that of the four jurisdictions cited by the majority, all except Louisiana have not, in fact, adopted an absolute prohibition on this practice. New York vests the discretion in the trial judge to determine whether to allow this type of evidence;[1] Connecticut has acknowledged that in situations where there is substantial evidence implicating the witness in the crime, such testimony may be proper;[2]

---

1. *People v. Yager*, 226 A.D.2d 830, 640 N.Y.S.2d 642 (N.Y.App.Div. 1996).

2. *State v. Bryant*, 202 Conn. 676, 523 A.2d 451 (1987).

and New Jersey has left the door open to this type of evidence by explicitly acknowledging, "There may be constitutional issues and questions of fundamental fairness projected by the inability of a defendant in certain circumstances to call a witness for purposes of asserting his Fifth Amendment privilege before the jury and obtaining a beneficial inference." *State v. Robinson*, 253 N.J.Super. 346, 601 A.2d 1162, 1173 (1992). I believe these jurisdictions, and perhaps Louisiana as well, would find the circumstances of this case compelling: A man, on trial for his life, seeks to mitigate his sentence by evidence that his codefendant was the more culpable individual, the one who planned the crime, obtained the weapon, and repeatedly shot the dying victim. If we are to change the holding in *Perry,* then we must acknowledge that in some cases the new rule must yield to "fundamental fairness." This is such a case. The trial court erred in refusing to allow appellant to call Pearce, and should therefore be reversed.

Just as disturbing as the majority's decision to abandon *Perry* in favor of a rigid rule, however, is its determination that the error in this case was harmless. The majority points to three inferences appellant sought to draw from questioning Pearce:

1. that the crime was planned by Pearce;

2. that Pearce alone obtained the gun from his uncle; and

3. that as Pressley lay dying, Pearce reentered the Blue Diamond and shot him two more times.

The majority deems this evidence merely cumulative to evidence that Pearce admitted his guilt and claimed he had shot both victims; that Pearce **and appellant** had procured the gun; and evidence that Pearce was more aggressive in general than appellant. Clearly this evidence did not show Pearce to be the planner nor sole procurer of the gun, nor did it show him to have mercilessly shot the dying man. This evidence cannot properly be deemed cumulative to the inferences which would have been drawn from Pearce's silence. The majority attempts to bolster its cumulative conclusion by emphasizing appellant did not contest his guilt, and by noting that appellant's counsel was allowed to argue his theory to the jury, albeit a theory unsupported by evidence. That appellant did not contest his liability is simply not relevant to the Pearce

issue: Appellant sought to call Pearce not to cast doubt on his own guilt, but rather in an attempt to mitigate his sentence. Further, to suggest that counsel's theoretical (and improper); [3] argument substitutes for evidence is contrary to both common sense and the law, since it is well-settled that argument of counsel is not evidence. *e.g., Sosebee v. Leeke,* 293 S.C. 531, 362 S.E.2d 22 (1987).

Where, as here, evidence has been improperly excluded, this Court has deemed the error harmless only where the excluded evidence was cumulative to other evidence in the record or irrelevant, or where the record contained overwhelming evidence of guilt. None of these conditions are met in this case. I would reverse and remand for a new sentencing proceeding where appellant would be permitted to call Pearce.

---

**3.** Defense counsel is limited to arguing evidence in the record and the inferences which can be drawn from it. *e.g., State v. Robinson,* 238 S.C. 140, 119 S.E.2d 671 (1961).