**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Calvin D. Ford, Appellant.

Appellate Case No. 2024-001870

───────────

Appeal From Horry County
Paul M. Burch, Circuit Court Judge
Benjamin H. Culbertson, Circuit Court Judge

───────────

Unpublished Opinion No. 2026-UP-273
Heard April 6, 2026 – Filed June 3, 2026

───────────

**REVERSED AND REMANDED**

───────────

Appellate Defender Jessica M. Saxon, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, Assistant Attorney General Tommy Evans, Jr., all of Columbia; and Solicitor Jimmy A. Richardson, II, of Conway, all for Respondent.

───────────

**PER CURIAM:** This appeal concerns the denial of a request for immunity under the Protection of Persons and Property Act. The act is codified under sections 16-11-410 to -450 of the South Carolina Code (2015), but its terms are not relevant to the dispositive issue here. Appellant Calvin D. Ford sought immunity against charges for murder, unlawful possession of a weapon, and possession of a weapon during the commission of a violent crime. He argued he acted in self-defense.

This appeal turns on a matter of procedure. Ford attempted to call his codefendant, Aliga Campbell, as a witness during the immunity hearing. Campbell's attorney told the circuit court that he had advised Campbell to invoke his Fifth Amendment right not to testify. Ford argues it was error to not have Campbell take the witness stand, even if only to confirm he would not testify. We agree with Ford. We therefore reverse and remand for a new immunity hearing.

## STANDARD OF REVIEW

We review immunity decisions under an abuse of discretion standard. *State v. Cervantes-Pavon*, 426 S.C. 442, 449, 827 S.E.2d 564, 567 (2019). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *State v. Douglas*, 411 S.C. 307, 316, 768 S.E.2d 232, 237 (Ct. App. 2014) (quoting *State v. Pittman*, 373 S.C. 527, 570, 647 S.E.2d 144, 166–67 (2007)). The same standard applies to decisions on the admission or exclusion of evidence. *Id.* As for questions of law, however, which include questions about one's invocation of the Fifth Amendment, our standard of review is de novo. *State v. Lawrence*, 439 S.C. 611, 616, 616 n.6, 889 S.E.2d 557, 560, 560 n.6 (2023).

## ANALYSIS

Although the evidence is very much disputed, there is evidence that Campbell, Ford's codefendant, was standing near the altercation that led to the alleged murder. Campbell also gave a written statement about the incident shortly afterwards to a private investigator working on Ford's behalf. Campbell gave the written statement before he was charged with the same murder. At the time of the immunity hearing, Ford and Campbell were codefendants awaiting a joint trial.

"[T]he privilege against self-incrimination is personal and may not be invoked by, or on behalf of, a third person." *State v. Hughes*, 328 S.C. 146, 150, 493 S.E.2d 821, 822 (1997) (emphasis omitted); *see also Moran v. Burbine*, 475 U.S. 412, 433 n.4

(1986) (reiterating "the elemental and established proposition that the privilege against compulsory self-incrimination is, by hypothesis, a personal one that can only be invoked by the individual whose testimony is being compelled"). Campbell's attorney could not invoke the Fifth Amendment privilege on Campbell's behalf. Campbell was not even present in the courtroom during the discussion about whether he would testify. Although we have no doubt Campbell's attorney advised Campbell to invoke his Fifth Amendment right not to testify, the fact remains there was no evidence of Campbell's decision.

It is perhaps unlikely that Campbell would have chosen to testify when a joint trial on the very same charges was looming, but we do not know for certain. And though the transcript illustrates that everyone wrestling with the proper procedure was focused on protecting Campbell's rights, the law mandates that Campbell be the one to invoke his Fifth Amendment right. *Hughes*, 328 S.C. at 150, 493 S.E.2d at 822; *Moran*, 475 U.S. at 433 n.4; *see also Ibarra v. Bondi*, 136 F.4th 63, 69 (4th Cir. 2025) (explaining the privilege against self-incrimination is personal to the witness and, though a witness's attorney may advise him or her to invoke the protection, the witness is who must ultimately assert it); *State v. McGuire*, 272 S.C. 547, 550, 253 S.E.2d 103, 105 (1979) ("A judge may not invoke a witness's Fifth Amendment privilege . . . ."). Campbell should have been present for and engaged in the discussion about whether he would testify. Thus, it was error to prevent Ford from calling Campbell.

The State argues that if precluding Campbell from testifying was error, it was harmless because even if Campbell had testified, his testimony would have been cumulative to other evidence Ford presented in his case for immunity. We disagree.

The harmless error doctrine provides "[s]ome errors—when considered in the context of the facts of a particular case—are so insignificant and inconsequential they do not require reversal." *State v. Reyes*, 432 S.C. 394, 405–06, 853 S.E.2d 334, 340 (2020). A harmless error must be "harmless beyond a reasonable doubt." *Id.* at 406, 853 S.E.2d at 340. In an immunity setting, an error may be harmless if the same result (the denial of immunity) would have been reached regardless of the error. *See id.* ("Error is harmless when it 'could not reasonably have affected the result of the trial.'" (quoting *State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985))).

We do not know whether Campbell would have testified. If he had testified, we do not know what he would have said. The written statement Campbell gave to Ford's investigator is in the record, and it is cumulative to some other witness testimony. Sometimes, the cumulative nature of excluded evidence may weigh in favor of a

finding that its improper exclusion was harmless. *See State v. Blackwell*, 420 S.C. 127, 160–61, 801 S.E.2d 713, 730–31 (2017). Other times, the redundancy of detail supplied by cumulative witness accounts is the thing that makes a particular version of events more believable. *See State v. Doctor*, 306 S.C. 527, 530, 413 S.E.2d 36, 38 (1992) (finding the exclusion of two confessions prejudicial because those confessions were identical to a third, and "[t]he redundancy of the details . . . is the very reason the testimony was so valuable to the defendant and its exclusion was not harmless"). Here, the circuit court found both versions of events "equally compelling." Because we do not know for certain what the circuit court would have found with additional witness testimony to consider, we cannot say the error in precluding Ford from calling Campbell was harmless beyond a reasonable doubt.

**CONCLUSION**

We reverse and remand for a new immunity hearing. We decline to address Ford's remaining issues and make no findings on whether immunity was appropriate on this record. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling it unnecessary for appellate courts to address remaining issues when the resolution of a prior issue is dispositive).

**REVERSED AND REMANDED.**

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**