556 S.E.2d 393

**Lawrence Merle BRUNO, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 25381.**

Supreme Court of South Carolina.

Submitted Sept. 27, 2001.

Decided Dec. 3, 2001.

Deputy Chief Attorney Joseph L. Savitz, III, of the South Carolina Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General B. Allen Bullard, Jr., all of Columbia, and Assistant Attorney General Kathleen Hodges, of Greenville, for respondent.

Justice WALLER.

We granted a writ of certiorari to review the denial of post-conviction relief (PCR) to petitioner Lawrence Bruno. We affirm.

## FACTS

Bruno was convicted of murder and sentenced to life imprisonment. On appeal, this Court affirmed. *State v. Bruno,* 322 S.C. 534, 473 S.E.2d 450 (1996). As related in the Court's opinion on direct appeal, the basic facts of the crime are as follows:

> [Bruno] and Mark Ross were drinking at a bar one evening in September 1993. The two left the bar in Ross's car. Ross testified that as he was driving away from the bar, he

tried to pass the car of James Murphy ("Victim"), who was travelling in the same direction. Victim drove aside Ross's vehicle, began taunting Ross, and pulled in front of him. Ross almost hit the curb in attempting to avoid Victim's car. Ross and Bruno followed Victim's car; they eventually saw it parked at a [Starvin' Marvin] convenience store. At Bruno's request, Ross pulled over into the convenience store's parking lot. From the passenger's side, Bruno looked over at Victim, who was rummaging through the trunk of his car. Bruno yelled to Victim: "Are you—are you James Murphy?" Victim responded, "Who, the hell, wants to know?" From the car, Bruno shot Victim. After the shots were fired, Ross began to drive off, and Bruno pulled his gun back into the car.

Bruno's testimony was that after entering Ross's vehicle at the bar, he fell asleep and did not awake until the car hit a bump or curb on the side of the road. When he awoke, he asked Ross what had happened. Ross replied that Victim had tried to run them off the road. Just at that moment Bruno saw Victim "getting in his [car] trunk," and he felt that Victim was coming toward him. Bruno testified "something snapped," and he shot Victim.

Police found Victim shot to death. His body was near his car in the convenience store's parking lot. The trunk of the car was open.

*Bruno*, 322 S.C. at 535, 473 S.E.2d at 451.

At trial, Bruno attempted to present that he feared Victim and therefore had acted in self-defense or in response to Victim's provocation. Evidence was admitted about two prior incidents between Victim and Bruno.

Regarding the police investigation of the crime, Dale McCard, the lead investigator, explained that he went to Ross's house to question him about his involvement. McCard stated that "[u]pon talking to Mr. Ross, he agreed to come down to the Law Enforcement Center at that time and take a polygraph concerning the event." Bruno's trial counsel did not object to this testimony.

During Ross's testimony, the State asked him what happened when he went to the police station. Ross replied: "A bunch of questioning. Took a polygraph test." Trial counsel

raised no objection. On cross-examination, Ross testified that he had been charged with accessory after the fact of murder and that when he first spoke with police, he had denied his involvement in the crime.

Additionally, Ross testified that on the day after the killing, he drove Bruno to the Old Easley Bridge where Bruno threw the gun over one side of the bridge, and the clip and bullets over the other side. In Bruno's statement to police, he stated that he alone went to the Saluda Dam Bridge and threw the gun away on the dam side of the bridge. Based on Ross's information, the gun and the bullets were recovered by police divers at the Old Easley Bridge.

During its closing, the State argued that Ross's version of the events had been corroborated. Specifically, the State argued that Ross "told the officers what happened at Starvin' Marvin and at the bridge. He didn't lie about it because everything's been corroborated."

The trial court charged the jury on murder, voluntary manslaughter, and self-defense. The jury convicted Bruno of murder. On appeal, Bruno raised two issues related to self-defense. The Court found, however, that Bruno was "not entitled to a self-defense charge, because he presented no evidence that he believed he was in imminent danger of losing his life or sustaining serious bodily injury." *Bruno,* 322 S.C. at 536, 473 S.E.2d at 452.

At the PCR hearing, trial counsel acknowledged that at the time of Bruno's trial, evidence of polygraph tests was inadmissible. Nevertheless, he testified that he did not have "any explanation" for why he did not object when evidence regarding Ross taking a polygraph was admitted at trial.

The PCR court found that counsel was not ineffective for failing to object to the testimony that Ross had taken a polygraph. Specifically, the PCR court ruled that (1) the two references were isolated comments; (2) counsel would have further focused the jury's attention to the comments if he had objected, and therefore, it was valid strategy to not object; and (3) even if counsel was deficient in failing to object, there was no prejudice to Bruno since the testimony was so ambiguous.

## ISSUE

Did the PCR court err in finding counsel was not ineffective for failing to object to the testimony that Ross had taken a polygraph test?

## DISCUSSION

Bruno argues that Ross's testimony at trial was key to establishing murder, as opposed to voluntary manslaughter, since it directly contradicted Bruno's own version of events. He further contends that the evidence about Ross taking a polygraph test was prejudicial because it provided improper corroboration for Ross's version of events.

The burden is on the applicant in a PCR proceeding to prove the allegations in his application. *E.g., Butler v. State,* 286 S.C. 441, 334 S.E.2d 813 (1985), *cert. denied,* 474 U.S. 1094, 106 S.Ct. 869, 88 L.Ed.2d 908 (1986). To establish a claim of ineffective assistance of trial counsel, a PCR applicant must show that: (1) counsel's representation fell below an objective standard of reasonableness and, (2) but for counsel's errors, there is a reasonable probability the result at trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Johnson v. State,* 325 S.C. 182, 480 S.E.2d 733 (1997). A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial. *Id.*

This Court must affirm the PCR court's decision when its findings are supported by any evidence of probative value. *E.g., Cherry v. State,* 300 S.C. 115, 386 S.E.2d 624 (1989). However, the Court will not uphold the findings of a PCR court if no probative evidence supports those findings. *Holland v. State,* 322 S.C. 111, 470 S.E.2d 378 (1996).

Because trial counsel was deficient for failing to object to the polygraph evidence, we hold the PCR court erred in finding that Bruno had not met the first prong of the *Strickland* test. Nonetheless, the PCR court correctly found Bruno did not carry his burden on establishing prejudice from this deficiency.

Before the Court's decision in *State v. Council*, 335 S.C. 1, 515 S.E.2d 508, *cert. denied*, 528 U.S. 1050, 120 S.Ct. 588, 145 L.Ed.2d 489 (1999),[1] the law of South Carolina was that evidence of polygraph examinations is generally inadmissible. *See State v. Johnson*, 334 S.C. 78, 90, 512 S.E.2d 795, 801 (1999) ("Evidence regarding the results of a polygraph test or the defendant's willingness or refusal to submit to one is inadmissible."); *State v. Wright*, 322 S.C. 253, 255, 471 S.E.2d 700, 701 (1996) ("Generally, the results of polygraph examinations are inadmissible because the reliability of the polygraph is questionable."). Because of the inadmissibility of this type of evidence, a trial judge should be meticulous in ensuring that the jury makes no improper inference from any reference to a polygraph. *State v. Pressley*, 290 S.C. 251, 252, 349 S.E.2d 403, 404 (1986).

Given the law at the time of Bruno's trial, counsel was deficient when he failed to object to the mention of Ross taking a polygraph. Even a passing reference to a polygraph can create an impermissible inference; therefore, counsel should have objected to this testimony and requested a curative instruction. *See id.* Although the PCR court found there was a valid strategy for the failure to object, we note that counsel in the instant case gave absolutely no explanation for his failure to object. *Cf. Stokes v. State*, 308 S.C. 546, 419 S.E.2d 778 (1992) (**where counsel articulates** a valid reason for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel). Because there is no evidence to support the PCR court's finding that the failure to object was counsel's strategic decision, the PCR court's finding on this issue cannot be upheld. *Holland, supra.*

■ However, the PCR court's finding of no prejudice is supported by ample probative evidence. First, the evidence admitted was simply that Ross took a polygraph test; the results of this test were not indicated at trial and, indeed, are

1. In *Council*, the Court held that because of the adoption of the SCRE, admissibility of polygraph results, as scientific evidence, should be analyzed under Rules 702 and 403, SCRE. However, because Bruno was tried in November 1994, prior to the adoption of the SCRE, pre-*Council* law applies to the analysis of the instant case.

not indicated anywhere in the record. While the jury could have inferred that Ross passed the polygraph test, an equally plausible inference is that Ross did not pass the polygraph because Ross testified that he initially denied his involvement in the case. Therefore, this is not a case where there is only one reasonable inference from the polygraph evidence. *Cf. Pressley, supra* (where, on direct appeal, the Court found reversible error based on repeated references to the appellant's submission to a polygraph examination **and** the evidence that the appellant confessed immediately after taking the polygraph). Because there was no evidence regarding **the results** of the polygraph test, Bruno failed to meet his burden of establishing the prejudicial impact of this evidence.

Second, we agree with the PCR court that the two references to the polygraph test were isolated comments. We note that the polygraph information was not specifically elicited by the State's questions. Moreover, the State did not exploit counsel's error and heighten whatever prejudicial effect it could have had. Although Bruno complains that the State argued in closing that Ross's version of events had been "corroborated," the State did not repeat in its closing that Ross had taken a polygraph test. Instead, the State simply stated that Ross "told the officers what happened at Starvin' Marvin **and at the bridge.** He didn't lie about it because everything's been corroborated." (Emphasis added). Clearly, at least a part of Ross's version of events, as opposed to Bruno's version, had been corroborated given that police found the gun and bullets at the bridge where Ross told police they could be found, not at another bridge where Bruno said he had thrown them. We therefore reject any argument that the only support for the State's "corroboration" argument was the polygraph test.

Finally, while the State's case certainly relied on Ross's credibility, Bruno's own credibility was also very much at issue. Bruno testified in his own defense, admitted shooting the victim, and primarily argued self-defense. By its verdict, the jury rejected Bruno's account. Thus, we hold that even if counsel had objected, there is no reasonable probability the result at trial would have been any different.

## CONCLUSION

Because our confidence in the outcome of trial has not been undermined by counsel's error, we affirm the denial of PCR.

**AFFIRMED.**

MOORE and BURNETT, JJ., concur.

TOAL, C.J., dissenting in a separate opinion in which PLEICONES, J., concurs.

Chief Justice TOAL:

I respectfully dissent. In my opinion, counsel's failure to object to Ross' references to taking a polygraph test was deficient *and* prejudicial to Bruno. I would find trial counsel's failure to object to Ross' statement that he had taken a polygraph, coupled with the State's closing argument that all of Ross' statements were "corroborated," impermissibly bolstered Ross' testimony, resulting in prejudice to Bruno. Such prejudice requires reversal of the denial of Bruno's application for PCR.

As noted by the majority, *Strickland v. Washington* requires a PCR applicant to show (1) counsel's representation fell below an objective standard of reasonableness and, (2) but for counsel's errors, there is a reasonable probability the result at trial would have been different. The majority finds defense counsel deficient for failing to object to the polygraph evidence, thereby violating the first prong of *Strickland.* I agree with the majority's analysis up to this point, but disagree with the majority's conclusion that Bruno was not prejudiced by counsel's error.

The majority finds trial counsel deficient based on our precedent that even a passing reference to a polygraph can create an impermissible inference. *See State v. Pressley,* 290 S.C. 251, 349 S.E.2d 403 (1986)(citing *State v. McGuire,* 272 S.C. 547, 253 S.E.2d 103 (1979)). Our case law indicates defense counsel should object to the even the slightest reference to a polygraph and should also request a curative instruction from the judge. *See Id.* In this case, trial counsel did not object or request a curative instruction when the State's chief witness, Ross, referred to taking a polygraph in his testimony. Furthermore, counsel likewise failed to object to State's clos-

ing statement that their chief witness' story had been corroborated: Ross "told the officers what happened at Starvin' Marvin and at the bridge. He didn't lie about it because everything's been corroborated." Ross' story about the recovery of the weapon at the bridge was corroborated when the police found the weapon there, but Ross' version of the events at the Starvin' Marvin was not likewise corroborated. Bruno certainly told a different version and no other witness testified to corroborate Ross' story. Therefore, the only possible inference the jury could draw from this closing statement was that Ross' polygraph results corroborated his testimony.

Therefore, I would find Ross' testimony was improperly bolstered by his reference to his polygraph test and by the reference to corroboration of Ross' testimony in the closing statement. Although Ross did not testify about the results of his polygraph, the State's closing statement implies the results of the test corroborated Ross' story. This Court has held repeatedly that polygraphs are inadmissible because they are unreliable. *State v. Council*, 335 S.C. 1, 515 S.E.2d 508 (1999). Whether the jury believed Bruno's or Ross' version of events, whether they believed Bruno or Ross to be more credible, determined the outcome of this case. Thus the testimony of Ross, as an eye-witness, was critical, and Ross' reference to his polygraph test, coupled with the State's closing that Ross' testimony had been corroborated, gave Ross an unfair edge over Bruno. Therefore, I would hold Bruno was prejudiced by counsel's failure to object to the impermissible polygraph evidence.

For the foregoing reasons, I would hold the trial counsel's failure to object to the testimony that Ross had taken a polygraph test and the State's closing argument that Ross' testimony was corroborated, violated both prongs of *Strickland v. Washington*. Accordingly, I would **REVERSE** the PCR's court's ruling and **REMAND** for a new trial.

PLEICONES, J., concurs.